Filed 3/22/21  Melamed v. Cedars-Sinai Medical Center CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HOOMAN MELAMED, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CEDARS-SINAI MEDICAL CENTER et al., <br><br> Defendants and Respondents. | B292794 <br><br> (Los Angeles County Super. Ct. No. BS169534) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Appeal dismissed.

Fenton Law Group, Henry R. Fenton, and Dennis E. Lee for Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Robin Meadow, and Jeffrey E. Raskin for Defendants and Respondents.

—————————————

On July 15, 2011, the medical staff of Cedars-Sinai Medical Center (Cedars) summarily suspended Hooman Melamed, M.D.'s privileges to perform back surgeries in scoliosis and kyphosis cases, after Dr. Melamed's operation on a 12-year-old scoliosis patient resulted in complications and necessitated a second, corrective surgery. In a year-long peer review hearing that began in September 2012 and concluded in November 2013, Dr. Melamed challenged the summary suspension of his privileges (and other recommendations of Cedars's medical staff not at issue on appeal). The Hearing Committee concluded, among other things, the summary suspension was reasonable and warranted at the time it was imposed but, at the time of the Hearing Committee's decision, the portion of the initial suspension that remained in effect should be terminated and Dr. Melamed's privileges reinstated, with prospective review of his clinical management in pediatric and adolescent scoliosis cases. Dr. Melamed pursued administrative appeals of the recommendations not in his favor, and both Cedars's Appeal Committee and the Board of Directors of Cedars upheld the Hearing Committee's findings, conclusions, and recommendations. Dr. Melamed filed a petition for a writ of administrative mandate in the trial court, challenging the imposition of the summary suspension of his privileges, and the trial court denied the petition.

On appeal, Dr. Melamed does *not* challenge the summary suspension of his privileges *at the time it was imposed* on July 15, 2011, as he did before the Hearing Committee and in his petition for a writ of administrative mandate. Instead, he challenges the sufficiency of the evidence supporting the summary suspension as of August 1, 2011, 17 days after it was imposed, when Cedars's

medical staff sent him an amended notice of action informing him the summary suspension remained in effect, and listing additional patient cases on which the summary suspension was based. As Dr. Melamed frames the issue on appeal, his "challenge is relatively narrow: that the August 1, 2011 decision to continue that summary suspension for more than 14 days, at which point it became a reportable event, was not reasonable and warranted, given the information reasonably available to [Cedars] at the time, and so must be set aside."

The primary defect in Dr. Melamed's contention is that the Hearing Committee was not tasked specifically with evaluating whether Dr. Melamed's summary suspension was reasonable and warranted *as of August 1, 2011*. And that was a very different question in light of the investigation Cedars's medical staff conducted between the July 15, 2011 imposition of the summary suspension and August 1, 2011 (e.g., investigating several other of Dr. Melamed's surgeries, a meeting of six physicians to discuss Dr. Melamed's cases, and a two-hour meeting with Dr. Melamed). Instead, Dr. Melamed asked the Hearing Committee to evaluate and make recommendations regarding whether the summary suspension was reasonable and warranted at the time it was imposed in July 2011, and whether the portion of the summary suspension still in effect at the time of the September 2012-November 2013 hearing should be terminated, among other issues. In an administrative mandamus proceeding like this one, we are tasked with reviewing for substantial evidence the findings, conclusions, and recommendations of the Hearing Committee—the body with the technical, subject-matter expertise. It is not the province of this court to review the medical evidence presented at the peer review hearing and make

findings and conclusions in the first instance on an issue not placed before the Hearing Committee.  Because Dr. Melamed did not place before the Hearing Committee the sole issue he asks us to review, and the Hearing Committee did not reach any conclusions on this issue based on the evidence before it, Dr. Melamed has failed to exhaust his administrative remedies, and we dismiss his appeal.

## BACKGROUND[1]

Dr. Melamed is a board-certified orthopedic spine surgeon who has been licensed to practice medicine in California since 2004.

## I.    The Surgery

On July 11, 2011, Dr. Melamed performed the scoliosis-correction surgery that led to the summary suspension of his privileges by Cedars's medical staff.  Dr. Melamed positioned 12-year-old D.W. on the operating table.  During surgery, he noticed her pelvis was slipping through an opening in the table, altering the alignment of her spine.  He requested larger pads to help him stabilize her position, but he did not receive them.  He asked nurses to go under the table, push up her pelvis, and hold it still, but that did not fix the issue.  Dr. Melamed did not close D.W.; he continued to operate.  He extended the incision up her spine and fused her higher vertebrae.  Realizing he would not be able to complete the surgery because of the continuing problems with

---

[1] The background facts in this opinion are abbreviated because we are not reviewing the Hearing Committee's findings, conclusions, and recommendations for substantial evidence, as Dr. Melamed asks us to do.  Rather, we are resolving this appeal based on our analysis of Dr. Melamed's failure to exhaust his administrative remedies.

4

D.W.'s position on the table, he placed a temporary rod in her spine and decided he would perform another corrective surgery on her in a few days. What Dr. Melamed originally believed would be a simple surgery lasted more than eight hours. D.W.'s lordosis (inward curvature of the lumbar spine) was worse after the surgery, and she had abrasions on her face and body due to the number of hours she spent on the operating table.

Dr. William Brien, Executive Vice Chairman for the Department of Surgery, initiated a peer review investigation, after nursing/operating room staff reported the surgery for potential review. Dr. Brien reviewed the case with a spine surgeon, who had performed adolescent scoliosis surgeries. Dr. Brien also spoke with Dr. Melamed on July 14, 2011, three days after the surgery. Dr. Brien did not have the benefit of Dr. Melamed's operating report because Dr. Melamed had not yet dictated it, violating Cedars's rule requiring dictation of such reports within 24 hours after surgery.

Dr. Brien consulted with the Chair of the Department of Surgery, who concurred with Dr. Brien's recommendation that Cedars's medical staff impose a summary suspension of Dr. Melamed's privileges. After receiving their recommendation, Dr. Neil Romanoff, the Vice President for Medical Affairs, consulted with the Chief of Staff, and then decided to impose the summary suspension.

## II. The Summary Suspension and Notices of Charges
### A. July 15, 2011 Notice of Action

On July 15, 2011, Cedars's medical staff sent Dr. Melamed a Notice of Action (signed by Dr. Romanoff), informing him that, effective immediately, his privileges to treat scoliosis and kyphosis in adult, pediatric and adolescent patients were

summarily suspended after determination that failure to suspend such privileges might result in imminent danger to Cedars's patients. The notice stated the summary suspension was based on D.W.'s surgery, explaining: "This case raises concerns regarding your judgment, technical skill, and competency in managing scoliosis cases. These concerns are based on your choice of the wrong table for the patient's size and procedure, your failure to adequately stabilize the patient, and your continued attempts to manipulate the patient's spine despite your inability to stabilize her.[2] In addition, the surgery lasted in excess of 11 hours, which apparently contributed to the pressure areas [abrasions] that the patient sustained."[3] The notice invited Dr. Melamed to provide a written response to the charges by July 21, 2011.

The July 15, 2011 Notice of Action also stated the medical staff anticipated contacting Dr. Melamed within 14 days "to provide a final determination on this action." The notice further informed him that if the suspension remained in effect for more than 14 days, Cedars would report it to the Medical Board of California and the National Practitioner Data Bank pursuant to Business and Professions Code section 805, and Dr. Melamed would be entitled to request a peer review hearing.

After imposition of the summary suspension, the medical staff's investigation continued. Dr. Brien consulted with Dr. David Skaggs, the physician who performed D.W.'s further

---

[2] The doctor who performed the further correction surgery on D.W., a couple days after Dr. Melamed's summary suspension, used the same type of operating table Dr. Melamed had used.

[3] There is evidence indicating the surgery lasted between eight and nine hours.

correction surgery. Dr. Melamed prepared his operative report, and the medical staff reviewed it. The medical staff reviewed some of Dr. Melamed's other scoliosis and kyphosis cases and found concerns with a few of them. Dr. Melamed's attorneys provided a written response to the charges. The medical staff sent Dr. Melamed requests for information regarding the four cases under investigation (including D.W.'s case), to which Dr. Melamed did not initially respond, saying he did not receive the requests.

On July 27, 2011, Dr. Brien met with five other physicians to review the four surgeries under investigation. Based on the information before them, which was limited because they did not have the information requested from Dr. Melamed, the group unanimously recommended that Dr. Melamed's summary suspension remain in effect. On July 29, 2011, Dr. Brien and Dr. Richard Delamarter, co-director of the Cedars's Spine Center, met with Dr. Melamed for two hours. Because the meeting did not satisfy their concerns, and Dr. Melamed still had not provided all requested documents, Drs. Brien and Delamarter recommended the summary suspension remain in effect.[4]

**B. August 1, 2011 Amended Notice of Action**

On August 1, 2011, Cedars's medical staff sent Dr. Melamed an Amended Notice of Action, informing him the

---

[4] As indicated above, this factual account does not include the detailed summary of the investigation that would be required to address Dr. Melamed's challenge to the sufficiency of the evidence supporting the continued summary suspension of his privileges as of August 1, 2011. This factual account includes the facts necessary for the chronology of events and the exhaustion of administrative remedies analysis.

summary suspension of his privileges to treat scoliosis and kyphosis in adult, pediatric and adolescent patients remained in effect, based on D.W.'s case as well as the other enumerated cases the medical staff identified during its review of his other surgeries. Regarding D.W.'s case, the amended notice stated: "That case reflected concerns regarding your poor judgment in extending the correction level in a pediatric patient when you could not achieve the correction and your poor technical skill in failing to achieve the desired correction and causing a hyperlordic spine." Regarding the other enumerated patient cases, the amended notice stated the medical staff "was concerned about several issues, including without limitation, your poor judgment in deciding to proceed in a complex case on a 15 year old without an assistant, your poor judgment in performing a surgery in the presence of an active infection, and your lack of competence in proceeding with surgeries in the context of questionable indications." The amended notice also explained that Dr. Melamed's statements during the July 29, 2011 meeting did not assuage the medical staff's concerns about these cases, and the medical staff believed failure to maintain the summary suspension might result in imminent danger to Cedars's patients and employees.

The August 1, 2011 Amended Notice of Action also informed Dr. Melamed that the summary suspension would be reported to the Medical Board of California and the National Practitioner Data Bank (and it was), as required by law, because the summary suspension had been in effect for more than 14 days. The amended notice also apprised Dr. Melamed of his hearing rights. Finally, the amended notice advised Dr. Melamed to provide the information that had been requested in

8

earlier correspondence regarding the enumerated patient cases. The amended notice explained that if he did not provide the information, or the information he provided did not resolve the medical staff's concerns, the medical staff would recommend that his privileges to treat scoliosis and kyphosis in adult, pediatric and adolescent patients be terminated.

On August 11, 2011, Dr. Melamed provided some of the requested documents, with a letter to Dr. Brien, stating "the Department should now have all or substantially all of the salient documentation necessary to complete a thorough review of my performance in each case." On August 22, 2011, the medical staff requested further information from Dr. Melamed on D.W.'s case.

On August 29, 2011, Dr. Melamed requested a peer review hearing to challenge the summary suspension.

C. **September 21, 2011 Second Amended Notice of Action**

On September 21, 2011, Cedars's medical staff sent Dr. Melamed a Second Amended Notice of Action, informing him that after meeting with him again and reviewing materials he provided, the medical staff recommended his privileges to treat scoliosis and kyphosis in pediatric patients be terminated. The second amended notice also informed him the medical staff was lifting the summary suspension of his privileges to treat scoliosis and kyphosis in adult cases and imposing a proctoring requirement with respect to such cases. The second amended notice stated Cedars would construe Dr. Melamed's August 29, 2011 request for a peer review hearing on the summary suspension to include the recommendation for termination of privileges and the proctoring requirement.

## III. The Peer Review Hearing and Administrative Appeal

The peer review hearing was held during 15 sessions between September 2012 and November 2013. Both sides were represented by counsel throughout.

### A. Issues placed before the Hearing Committee

After the presentation of evidence and the arguments of counsel, the Hearing Officer advised the Hearing Committee in pertinent part as follows regarding the issues the committee was tasked with evaluating:

"The medical staff and Dr. Melamed have agreed that I should advise you regarding your deliberations as follows.

"Dr. Melamed is challenging two separate actions of the medical staff. The first is the July 15, 2011 summary suspension of his privileges to treat adult, pediatric and adolescent scoliosis and kyphosis patients.

"The second is the recommended termination of these privileges for pediatric and adolescent patients, and the imposition of level III proctoring of those privileges for adult patients.

"In regard to the summary suspension of Dr. Melamed's privileges to treat adult, pediatric and adolescent scoliosis and kyphosis patients, the medical staff has the burden of proof to show by a preponderance of the evidence that the decision to act immediately to summarily suspend Dr. Melamed was reasonable and warranted to protect against the possibility of imminent danger to the health of a [Cedars] patient or a prospective patient.

[¶] . . . [¶]

"In making your decision whether the suspension was reasonable and warranted, you should consider only evidence

10

that was known or should reasonably have been known to the medical staff at the time of the summary suspension.

[¶]

"You must decide whether the revocation and proctoring recommendations are reasonable and warranted, separate and apart from your decision about whether the summary suspension was reasonable and warranted.

"In making this decision you may consider all of the evidence you heard or read during the hearing. . . ."

### B. The Hearing Committee's report

On January 13, 2014, the Hearing Committee issued its report. Therein, the Hearing Committee stated it was tasked with evaluating the summary suspension of Dr. Melamed's privileges to treat scoliosis and kyphosis in adult, adolescent, and pediatric patients, "as described in the notice of action dated July 15, 2011, and amended notice of action dated August 1, 2011." The Hearing Committee's findings and conclusions regarding the summary suspension state in full:

"a. Dr. Melamed admitted and performed surgery with instrumentation and occipital fusion on adolescent scoliosis patient [D.W.] on July 11, 2011. Before surgery, Dr. Melamed treated [D.W.] as an outpatient in his office for several years. Dr. Melamed's office record satisfactorily recorded the progression of her condition, his treatment of her and the indications for surgery. Although clinical judgment may differ whether [D.W.] was an appropriate candidate for surgery with her degree of spinal curvature, the preponderance of evidence was that Dr. Melamed's rationale for operating on the patient was reasonable.

"b. The Department of Surgery acted reasonably in conducting an investigation of the case because of the routine

11

nature of the case, unsatisfactory correction of the patient's spinal curvature and the harm to the patient of a worsened post-surgical spinal curvature, pressure sores, an extended fusion, a prolonged hospitalization and a second surgery.

"c.     The ad hoc committee of the Department of Surgery that investigated the case reasonably concluded that, based on the information available to it at the time, (i) Dr. Melamed[] failed initially to realize that the patient was losing position on the operating table, (ii) Dr. Melamed extended the fusion inappropriately and (iii) the failure to suspend Dr. Melamed's clinical privileges to treat patients with scoliosis or kyphosis with instrumentation and with or without occipital fusion may result in imminent danger to prospective patients.

"Based upon the foregoing findings, the [Hearing Committee] concludes that (i) the Staff sustained its burden to prove by a preponderance of the evidence that, based on the information reasonably available in July of 2011, the failure to take action may have resulted in imminent danger to the health of a patient and it was necessary to act immediately and (ii) the summary suspension of Dr. Melamed's clinical privileges to treat scoliosis and kyphosis with instrumentation with or without occipital fusion in adult, adolescent and pediatric patients was reasonable and warranted."  The Hearing Committee further recommended the summary suspension now be terminated and Dr. Melamed's privileges be reinstated.

As stated in the January 13, 2014 report, the Hearing Committee also made findings and conclusions regarding Cedars's medical staff's recommendations in the September 21, 2011 Second Amended Notice of Action:  (1) that Dr. Melamed's privileges to treat scoliosis and kyphosis in adolescent and

12

pediatric patients be terminated and (2) that Level III proctoring be imposed with respect to Dr. Melamed's privileges to treat scoliosis and kyphosis in adult patients. In these sections of the report, the Hearing Committee made findings regarding the other patient cases identified in the August 1, 2011 Amended Notice of Charges. The Hearing Committee concluded the above-described recommendation regarding termination of privileges "was not reasonable and warranted. However, it would be reasonable and warranted for the Medical Executive Committee to authorize a prospective review of the clinical management of Dr. Melamed's pediatric and adolescent scoliosis cases by a method to be determined by the Department of Orthopedic Surgery." The Hearing Committee concluded the above-described recommendation regarding Level III proctoring "should not be imposed."

Cedars's Medical Executive Committee "endorsed" the findings, conclusions, and recommendations in the Hearing Committee's report.

### C.     Administrative Appeal

Through the administrative process, Dr. Melamed appealed the Hearing Committee's findings and conclusions regarding the summary suspension and the recommendation for prospective review of the clinical management of his pediatric and adolescent scoliosis cases. Both Cedars's Appeal Committee and later its Board of Directors upheld the Hearing Committee's findings, conclusions, and recommendations.

## IV.   The Petition for a Writ of Administrative Mandate

On May 4, 2017, Dr. Melamed filed in the trial court a petition for a writ of administrative mandate against Cedars and its Board of Directors. He described the basis for his petition as

13

follows: "[Cedars and its Board of Directors] committed gross error in finding that the summary suspension of Dr. Melamed was reasonable and justified at the time it was imposed, in or about July or August 2011, based on the information available at the time. In fact, the overwhelming evidence available at the time was that Dr. Melamed had, at all times, behaved in a completely competent and professional manner, and that the minor and temporary adverse result in the case of patient [D.W.] -- which was readily corrected by [another doctor] with the correct equipment, and which would have been readily corrected by Dr. Melamed, with the correct equipment, if he had been given the opportunity to do so, as he had planned to do prior to his summary suspension."

In his opening brief in support of his petition, filed on May 3, 2018, Dr. Melamed stated: "The sole basis for the initial summary suspension of July 15, 2011 was a July 11, 2011 scoliosis correction surgery of an adolescent patient [D.W.]. In the August 1, 2011 decision to continue the suspension, [Cedars] also relied on four other very minor patient cases. The legal basis for [the petition for a writ of administrative mandate] is twofold: (a) substantial evidence does not support the decision to continue the August 1, 2011 decision [*sic*]; and (b) Dr. Melamed was not given fair opportunity to respond before August 1, 2011." Dr. Melamed further asserted, "while it may or may not have been reasonable to impose the immediate summary suspension, [Cedars]'s action on August 1, 2011 in continuing the summary suspension in excess of 14 days, leading to a reportable event, was not reasonable and warranted, based on the information that [Cedars] knew or should reasonably have known at the time, nor was he given fair opportunity to respond."

14

In the opposition to Dr. Melamed's petition, Cedars and its Board of Directors argued Dr. Melamed's challenge to his summary suspension—as newly framed in his opening brief as a challenge to the August 1, 2011 continuation of his summary suspension—was barred by his failure to exhaust his administrative remedies and plead the issue in his petition. In the alternative, Cedars and its Board of Directors argued substantial evidence supported the summary suspension, both at the time it was imposed on July 15, 2011, and as of August 1, 2011 when the medical staff informed him the summary suspension would remain in effect.

On July 18, 2018, after hearing oral argument by the parties, the trial court issued a 16-page order, denying Dr. Melamed's petition for a writ of administrative mandate on all grounds set forth in the opposition brief: failure to exhaust administrative remedies and plead the issue in the petition, and substantial evidence supporting the summary suspension. On August 13, 2018, the trial court entered judgment in favor of Cedars and its Board of Directors.

## DISCUSSION

"In Business and Professions Code section 809 et seq., 'the Legislature has granted to individual hospitals, acting on the recommendations of their peer review committees, the primary responsibility for monitoring the professional conduct of physicians licensed in California.' " (*Eight Unnamed Physicians v. Medical Executive Com.* (2007) 150 Cal.App.4th 503, 511.) A "doctor who is challenging the propriety of a hospital's denial or withdrawal of staff privileges must pursue the internal remedies afforded by that hospital to a final decision on the merits before resorting to the courts for relief. [Citations.] This requirement

15

both accords recognition to the expertise of the organization's quasi-judicial tribunal and promotes judicial efficiency by unearthing the relevant evidence and providing a record that the court may review. [Citation.] 'The exhaustion doctrine "is not a matter of judicial discretion, but is a fundamental rule of procedure" [citation] under which "relief must be sought from the administrative body and this remedy exhausted before the courts will act." ' " (*Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center* (2001) 93 Cal.App.4th 607, 619-620; *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 469, 476; *Monterey Coastkeeper v. State Water Resources Control Bd.* (2018) 28 Cal.App.5th 342, 359 [" 'The primary purpose of the doctrine [of exhaustion of administrative remedies] "is to afford administrative tribunals the opportunity to decide in a final way matters within their area of expertise prior to judicial review." [Citation.] "The essence of the exhaustion doctrine is the [tribunal]'s opportunity to receive and respond to articulated factual issues and legal theories before its actions are subjected to judicial review" ' "].)

"To advance the purpose of the exhaustion doctrine, *the exact issue*, not merely generalized statements, must be raised. [Citation.] ' "The petitioner bears the burden of demonstrating that the issues raised in the judicial proceeding were first raised at the administrative level. [Citation.]" [Citation.] An appellate court employs a de novo standard of review when determining whether the exhaustion of administrative remedies doctrine applies.' " (*Monterey Coastkeeper v. State Water Resources Control Bd.*, *supra*, 28 Cal.App.5th at p. 359, italics added.)

On appeal, Dr. Melamed contends the continuation of the summary suspension as of August 1, 2011 was not reasonable

16

and warranted in light of the information reasonably available to Cedars.  Dr. Melamed has not met his burden of demonstrating he raised this issue before the Hearing Committee in his peer review hearing, and we conclude he did not.

As set forth above, after the parties' presentation of evidence and argument at the peer review hearing, the Hearing Officer read to the Hearing Committee the parties' agreed upon statement regarding the issues the Hearing Committee was tasked with evaluating.  The Hearing Officer began:  "Dr. Melamed is challenging two separate actions of the medical staff. The first is the July 15, 2011 summary suspension of his privileges to treat adult, pediatric and adolescent scoliosis and kyphosis patients.  [¶]  "The second is the recommended termination of these privileges for pediatric and adolescent patients, and the imposition of level III proctoring of those privileges for adult patients."  The parties' agreed upon statement of issues, as read by the Hearing Officer, did not tell the Hearing Committee that one of the actions it was supposed to evaluate was the *continuation* of the summary suspension as of August 1, 2011.

The Hearing Officer went on to tell the Hearing Committee, as part of the parties' agreed upon statement:  "In regard to the summary suspension of Dr. Melamed's privileges to treat adult, pediatric and adolescent scoliosis and kyphosis patients, the medical staff has the burden of proof to show by a preponderance of the evidence that the decision *to act immediately to summarily suspend Dr. Melamed* was reasonable and warranted to protect against the possibility of imminent danger to the health of a [Cedars] patient or a prospective patient."  (Italics added.)  The decision on August 1, 2011 to allow the summary suspension to

17

remain in effect cannot be characterized as a decision *to act immediately* to summarily suspend Dr. Melamed.  The decision to act immediately occurred on July 15, 2011 when the medical staff imposed the summary suspension.  Thus, it is clear from the statement of issues that the parties sought an evaluation of whether the summary suspension was reasonable and warranted at the time it was imposed on July 15, 2011—not as of August 1, 2011, after further investigation conducted by Cedars's medical staff, including review of several other of Dr. Melamed's surgeries, a meeting of six physicians to discuss Dr. Melamed's cases, and a two-hour meeting with Dr. Melamed.

The Hearing Officer further informed the Hearing Committee:  "In making your decision whether the suspension was reasonable and warranted, you should consider only evidence that was known or should reasonably have been known to the medical staff at the time of the summary suspension."  For purposes of evaluating the summary suspension, therefore, the Hearing Committee was not given the option of considering evidence known to the medical staff after imposition of the summary suspension and at the time the summary suspension *was continued* on August 1, 2011.

The Hearing Officer told the Hearing Committee they could consider evidence known to the medical staff after imposition of the summary suspension (July 15, 2011) with regard to the issues other than summary suspension:  "You must decide whether the revocation and proctoring recommendations are reasonable and warranted, separate and apart from your decision about whether the summary suspension was reasonable and warranted.  [¶]  In making this decision *you may consider all of the evidence you heard or read during the hearing*."  (Italics added.)

18

The Hearing Committee's January 13, 2014 report detailing its findings, conclusions, and recommendations demonstrates the Hearing Committee followed the Hearing Officer's instructions (as agreed upon by the parties) regarding the issues and consideration of the evidence. The Hearing Committee's findings regarding the summary suspension only address patient D.W., the only case under investigation on July 15, 2011, the date of imposition of the summary suspension. The August 1, 2011 amended notice of action, informing Dr. Melamed the summary suspension would remain in effect, also informed him there were several, additional cases under investigation. The Hearing Committee made findings and conclusions on those other cases in making recommendations regarding termination of Dr. Melamed's privileges and lifting the summary suspension, but not in concluding the summary suspension was reasonable and warranted when it was imposed.

The Hearing Committee's conclusions regarding the summary suspension state, in pertinent part, "the Staff sustained its burden to prove by a preponderance of the evidence that, based on the information reasonably available in July of 2011, the failure to take action may have resulted in immediate danger to the health of a patient and *it was necessary to act immediately*." (Italics added.) Again, the only action taken immediately was that to impose the summary suspension on July 15, 2011, and not that to continue the summary suspension on August 1, 2011.[5]

---

[5] The Hearing Committee referenced the August 1, 2011 Amended Notice of Action once in relation to the summary suspension, in stating Dr. Melamed was challenging, "[s]ummary suspension of his clinical privileges to treat scoliosis and kyphosis

Dr. Melamed argues the August 1, 2011 continuation of the summary suspension was necessarily part of his administrative challenge because a physician is only entitled to a peer review hearing if the summary suspension remains in effect for more than 14 days after its imposition. (Bus. & Prof. Code, §§ 809.1, 809.3; *Sadeghi v. Sharp Memorial Medical Center Chula Vista* (2013) 221 Cal.App.4th 598, 615.) In his reply appellate brief, he asserts: "In a strict sense, the continuation of the suspension past 14 days was not so much a separate action as it was part of the same suspension. While the July 15, 2011 Notice of Action and the August 1, 2011 Amended Notice of Action have been referred to as separate actions, they were really part of the same adverse action being challenged by Dr. Melamed—the summary suspension—with only the latter triggering his appeal rights [peer review hearing]." We note that Dr. Melamed himself separates these actions, expressly abandoning his challenge to the sufficiency of the evidence supporting imposition of the summary suspension on July 15, 2011, and maintaining a challenge to the sufficiency of the evidence supporting the continuation of the summary suspension as of August 1, 2011.

---

with instrumentation and with or without occipital fusion in adult, adolescent and pediatric patients *as described in the notice of action dated July 15, 2011, and amended notice of action dated August 1, 2011.* (Italics added.) That the Hearing Committee indicated the August 1, 2011 Amended Notice of Action *described* the summary suspension, does not mean the Hearing Committee was evaluating whether the continuation of the summary suspension on August 1, 2011 was reasonable and warranted, and we do not interpret the report in that manner, despite Dr. Melamed's claim to the contrary.

The problem for Dr. Melamed is the Hearing Committee did *not* evaluate or make findings or conclusions regarding whether the information known to Cedars's medical staff on August 1, 2011 supported continuation of the summary suspension, and the parties did not ask the Hearing Committee to do so.[6] Without such findings and conclusions there is nothing for this court to review. To entertain this issue, we would be making factual findings and conclusions in the first instance, which we may not do. It is for the body with subject matter expertise to make such factual findings and conclusions in the first instance.

Dr. Melamed and Cedars's medical staff agreed on the questions they wanted the Hearing Committee to address. If Dr. Melamed wanted the Hearing Committee to address the evidence supporting the summary suspension as of August 1, 2011, he

---

[6] The Hearing Committee considered information known to Cedars after July 15, 2011 (e.g., the patient cases other than D.W.) for purposes of making its recommendations regarding termination of Dr. Melamed's privileges and lifting the summary suspension, issues it evaluated as of the time of the peer review hearing. Accordingly, we are not compelled by Dr. Melamed pointing out that he referenced information Cedars knew after July 15, 2011 in his briefs and arguments before the Hearing Committee, as such information was relevant to the other issues the Hearing Committee was evaluating.

The Hearing Committee referenced the July 27, 2011 meeting of physicians in the summary suspension portion of its January 13, 2014 report, not as an indication it was evaluating the reasonableness of the summary suspension as of August 1, 2011, but in support of its conclusion the July 15, 2011 imposition of the summary suspension was reasonable and warranted, as the group of physicians concluded on July 27, 2011.

21

should have placed that issue before the Hearing Committee by including it in the parties' agreed upon statement.  He did not.  He only asked for the Hearing Committee to review "the July 15, 2011 summary suspension of his privileges to treat adult, pediatric and adolescent scoliosis and kyphosis patients" and "the recommended termination of these privileges for pediatric and adolescent patients, and the imposition of level III proctoring of those privileges for adult patients."  He cannot now complain the Hearing Committee did not evaluate an issue he did not raise to the committee.

For the foregoing reasons, we conclude Dr. Melamed failed to exhaust his administrative remedies as to the only issue he raises on appeal.  It was his burden to demonstrate he placed before the Hearing Committee the issue he now raises on appeal, and he did not satisfy that burden.  Accordingly, we dismiss his appeal.

## DISPOSITION

The appeal from the judgment is dismissed.  Respondents are entitled to recover costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.          FEDERMAN, J.*

---

*  Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22