Filed 11/17/22  Medical Staff of St. Mary etc. v. St. Mary Medical Center CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MEDICAL STAFF OF ST. MARY MEDICAL CENTER, Plaintiff and Appellant, v. ST. MARY MEDICAL CENTER, Defendant and Respondent. | B316601 (Los Angeles County Super. Ct. No. 20STCP01915) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff.  Affirmed.

Theodora Oringher, Anthony F. Witteman, Adam G. Wentland, and Michelle Monroe for Plaintiff and Appellant.

Jamie Ostroff and Charlotte M. Tsui for California Medical Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Manatt, Phelps & Phillips, Barry S. Landsberg, Doreen W. Shenfeld, Joanna S. McCallum, and Craig S. Rutenberg for Respondent.

ArentFox Schiff, Lowell C. Brown, Annie Chang Lee, and Man Him Joshua Chiu for California Hospital Association as Amicus Curiae on behalf of Defendant and Respondent.

_____

**INTRODUCTION**

"Hospitals in this state have a dual structure, consisting of an administrative governing body, which oversees the operations of the hospital, and a medical staff, which provides medical services and is generally responsible for ensuring that its members provide adequate medical care to patients at the hospital." (*El-Attar v. Hollywood Presbyterian Medical Center* (2013) 56 Cal.4th 976, 983.) This appeal arises from a dispute between these two structural elements of St. Mary Medical Center (the Hospital) and the scope of each element's respective authority.

After new leadership at the Hospital declined to make changes to the peer review process and solicited proposals for new exclusive contracts for several departments, the Hospital's medical staff (the Medical Staff) filed a petition for writ of mandate to prevent the Hospital from allegedly violating the independence and bylaws of the Medical Staff. The trial court ruled the Medical Staff failed to exhaust its administrative remedies for certain aspects of the dispute and failed to identify a ministerial duty to support the relief sought.

The Medical Staff does not effectively challenge the trial court's finding it failed to exhaust its administrative remedies, which proves fatal to all but one of the Medical Staff's arguments

2

on appeal.  Because the Medical Staff also failed to identify a ministerial duty to support its remaining challenge to the trial court's ruling, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *A Dual Management Structure Governs St. Mary Medical Center*

Dignity Health owns and operates the Hospital.  The Dignity Health Board is the governing board of the Hospital and has final authority over, and responsibility for, the operations of the Hospital.  (See Cal. Code Regs., tit. 22, § 70035.)  The Dignity Health Board created a Hospital Community Board (HCB) with "final authority to approve all hospital policies and procedures for hospital services . . . where such approval is required of a governing body by law, regulation or accrediting body."  The HCB's authority, however, is actually not so "final."  The Dignity Health Board may exercise the HCB's approval rights by giving notice to the HCB, and "in such case, the referenced policies and procedures shall be deemed approved by the [HCB]."[1]

The bylaws of the HCB make the HCB responsible for matters concerning the Medical Staff to the extent the Dignity Health Board delegates such authority to the HCB.  The HCB bylaws provide the Medical Staff "shall develop and adopt Medical Staff Bylaws and review its Medical Staff Bylaws

---

[1]    The Medical Staff argued in the trial court that the Hospital's "governing body" was the HCB.  The trial court disagreed and found the Dignity Health Board was the Hospital's governing body.  The Medical Staff does not challenge that finding.

3

periodically. The Medical Staff shall submit its approved Medical Staff Bylaws and any needed and approved revisions to the [HCB] (or the body otherwise designated by the Dignity Health Board for approval), which approval shall not be unreasonably withheld . . . . The Dignity Health Board may, by notice to the [HCB], elect to exercise the approval rights of the [HCB] under this Section."

The medical staff of a hospital "is a separate legal entity from the hospital" (*Natarajan v. Dignity Health* (2021) 11 Cal.5th 1095, 1114) and is "responsible for the adequacy and quality of the medical care rendered to patients in the hospital" (*Mileikowsky v. West Hills Hosp.* (2009) 45 Cal.4th 1259, 1267). Business & Professions Code section 2282.5 (section 2282.5), subdivision (a), provides the medical staff's "right of self-governance" includes establishing standards for medical staff membership and privileges; establishing standards to oversee and manage quality assurance; and initiating, developing, and adopting medical staff bylaws, rules, regulations, and amendments, "subject to the approval of the hospital governing board, which approval shall not be unreasonably withheld." (See Cal. Code Regs., tit. 22, § 70703, subd. (b).) California law further requires medical staff bylaws to "provide formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate." (*Mileikowsky*, at p. 1267; see Cal. Code Regs., tit. 22, §§ 70701, 70703.)

The bylaws the Medical Staff adopted permit only members of the Medical Staff (or practitioners granted a temporary

4

appointment) to provide medical services to patients at the Hospital. In general, the Hospital enters into exclusive contracts with physician groups for services that require around-the-clock physician availability. The contracts are exclusive in the sense that only physicians affiliated with the contracted group may provide services to patients as members of the Medical Staff. Section 4.8.4 of the Medical Staff's bylaws provides that the expiration or termination of an exclusive contract "will result in the automatic termination of [an affiliated practitioner's] membership and privileges," unless otherwise stated in the contract. The bylaws give the Medical Staff authority to "review and make recommendations to the [HCB] regarding quality of care issues related to medical service arrangements for physician and/or professional services, prior to any decision being made" to execute, renew, modify, or terminate a medical service contract in a particular department. The Medical Executive Committee, which is comprised of members of the Medical Staff, represents the Medical Staff in dealings with the HCB.

Section 10.4 of the Medical Staff's bylaws creates a dispute resolution mechanism for "[a]ll disputes between the Governing Board/Administration and the Medical Staff . . . relating to the Medical Staff's rights of self-governance as set forth in [section] 2282.5." Under section 10.4 the parties must resolve disputes through an ad hoc dispute resolution committee, and neither party may initiate any legal action related to the dispute until the committee completes its efforts to resolve the dispute.

B.      *The Hospital's Chief Executive Officer Creates a Physician Advisory Council and Invites Proposals for New Contracts in the Anesthesiology, Radiology, and Emergency Departments*

Carolyn Caldwell became the chief executive officer of the Hospital in June 2017.  In December 2018 leaders of the Medical Staff, including Chief of Staff Dr. Douglas McFarland and Vice Chairperson Dr. Laura Russell, met with Caldwell to discuss changes to the Hospital's peer review process.  According to Dr. McFarland, Caldwell refused to make the requested changes, and two weeks later, Caldwell created a new entity, the Physician Advisory Council, to advise the Hospital on matters such as "physician engagement, quality measures, performance expectations, and strategic goals to address the growing health care needs in the community."  Caldwell characterized the Physician Advisory Council as "an administrative, not Medical Staff, committee."  The Medical Staff asserted, however, that its bylaws gave the Medical Executive Committee exclusive authority to represent the Medical Staff on such matters and that the Physician Advisory Council "was not an authorized committee of the Medical Staff."

According to Caldwell, she is authorized on behalf of the Hospital to approve exclusive contracts with groups of physicians.  Exclusive contracts in the anesthesiology, radiology, and emergency departments were scheduled to expire in 2019 and 2020.  Because the Hospital had not considered alternative providers of anesthesiology services since 2011, Caldwell informed the existing anesthesiology group and Dr. McFarland that the Hospital would issue a request for proposal (RFP) and consider proposals from the existing group and any other

6

anesthesiology practice. Ending the Hospital's relationship with the existing anesthesiology group would effectively terminate the privileges of that group's members, including Dr. Russell, under the terms of section 4.8.4 of the Medical Staff bylaws.

On February 5, 2019 Caldwell informed the Medical Executive Committee of the RFP for anesthesiology services and invited members of the Medical Executive Committee to attend a presentation from five contenders for the contract. The same day, Dr. McFarland sent a letter to the HCB on behalf of the Medical Executive Committee asking for a dispute resolution committee to address: (1) the administration's refusal to discuss the Hospital's "sources of clinical services"; (2) the administration's retaliation against Medical Staff leaders' "advocacy for improved patient protection and peer review policies"; and (3) the administration's interference with the Medical Staff's right to select its leadership by terminating existing contracts. The Medical Executive Committee asked the Hospital to renew the existing contracts until the parties could resolve the dispute, and Dr. McFarland informed the HCB that the Medical Executive Committee had voted to suspend enforcement of section 4.8.4 of the Medical Staff bylaws. The HCB denied the request for a dispute resolution committee because, according to the HCB, the dispute concerned "group physician contracts," not the Medical Staff's rights to self-governance under section 2282.5. The HCB, however, invoked a meet-and-confer process established by the organization that accredited the Hospital.

An interdisciplinary panel considered presentations from five anesthesiology groups at a meeting attended by a Medical Executive Committee officer. On February 21, 2019 the Medical

7

Executive Committee recommended to the HCB that the Hospital continue the existing contracts with the anesthesiology, radiology, and emergency services groups. Several days later the Medical Executive Committee met with the HCB and representatives from the administration to attempt to resolve the dispute concerning the contracts.

According to Caldwell, the Hospital considered the Medical Executive Committee's recommendation to maintain the existing providers, but a consensus of the interdisciplinary panel decided to award the anesthesiology contract to a new group that "could meet the Hospital's needs better than the existing group." Although the expiration of the previous group's contract initially ended Dr. Russell's privileges at the Hospital, the new anesthesiology group offered positions to all physicians affiliated with the prior anesthesiology group, including Dr. Russell, and she eventually rejoined the Hospital as an anesthesiologist with the new group.

The Hospital had not conducted an RFP for the radiology services contract for over 65 years, and the existing contract was scheduled to expire in October 2019. In July 2019 Caldwell informed the Medical Staff that she intended to issue an RFP for radiology, and in August 2019 a panel including a representative from the Medical Executive Committee reviewed proposals from three radiology groups. Caldwell asked the Medical Executive Committee for its recommendation by the middle of August, but because the Medical Executive Committee was "dark" in August and could not vote on a recommendation, the Medical Executive Committee referred Caldwell to its February 2019 recommendation to retain the existing provider. The panel selected a new group, and all but one of the physicians affiliated

with the previous contractor became affiliated with the new contractor and retained their clinical privileges.

The Hospital's emergency services contract was scheduled to expire in June 2020, and the Hospital had not conducted an RFP proposal for that contract since 2009. In February 2020 Caldwell informed the head of the existing group that she intended to initiate an RFP. In March 2020 three groups, including the existing emergency services group, made presentations to a panel that included members of the Medical Executive Committee. Based on feedback from the panelists, the Hospital awarded the emergency services contract to a new group. Dr. McFarland, who had been affiliated with the former emergency services provider, did not join the new group, but 21 of the former provider's 27 physicians did.

C.    *The Medical Staff Proposes Amendments to Its Bylaws*

In April 2019, after the Hospital awarded the anesthesiology contract to a new group, the Medical Executive Committee proposed 22 amendments to the Medical Staff bylaws. Two of the amendments would have changed section 4.8.4 dealing with exclusive contracts to allow practitioners whose group contract expired or was terminated to apply for Hospital privileges and to allow officers of the Medical Staff to serve in an administrative capacity for up to one year if the contract for the group to which they belonged expired or was terminated. Caldwell concluded many of the proposed amendments were "vague or unclear," and the Hospital and the Medical Executive Committee agreed to form a committee to resolve their differences. According to Caldwell, counsel for the Hospital and

9

the Medical Executive Committee met and conferred and resolved disputes regarding 10 of the 22 amendments, but Dr. McFarland nevertheless submitted all 22 of the original proposed amendments to the Medical Staff, which apparently approved them.

On July 25, 2019 the Medical Staff submitted the 22 proposed amendments to the HCB for approval. As stated, the Medical Staff bylaws provide that amendments submitted to the HCB are "deemed approved" if the HCB does not act on them within 60 days and that the HCB may not unreasonably withhold its approval. Also on July 25, 2019 the Dignity Health Board notified the Medical Executive Committee that it had rescinded the authority of the HCB to approve the proposed amendments and had appointed a subcommittee that included two HCB members to consider them. On September 19, 2019 the Dignity Health Board sent a letter to the Medical Executive Committee stating the Board had approved five of the proposed amendments, sent seven of them back for clarification or additional information, and rejected 10 of them. The letter explained why the Board did not approve the 10 rejected proposals. According to the chief executive officer of Dignity Health, each of the rejected amendments "in one way or another compromised the authority and responsibility vested in the Dignity Health Board as the governing body, licensee, owner and operator of the Hospital."

In December 2019 the Medical Staff requested an ad hoc dispute resolution committee pursuant to section 10.4 of the Medical Staff bylaws to resolve issues involving 19 of the proposed amendments. The committee met on June 16, 2020 and agreed on a process to review each disputed amendment. At the

10

end of the meeting the committee agreed to reconvene shortly, but that same day the Medical Staff filed this action in superior court.

> D. *The Medical Staff Files a Petition for Writ of Mandate Seeking Mandamus, Injunctive, and Declaratory Relief*

The Medical Staff filed a petition for writ of mandate against the Hospital seeking a writ of mandate under Code of Civil Procedure section 1085, injunctive relief, and declaratory relief. The Medical Staff alleged, among other things, the Hospital "terminated" the emergency services contract "as a vehicle for further eroding the ability of the physicians at [the Hospital] to provide independent, patient-centered, quality healthcare to their patients and further eliminating from Medical Staff leadership positions physicians who advocate against the Hospital on issues relating to patient care and Medical Staff self-governance." The Medical Staff claimed section 2282.5 gave it authority for "'front line' oversight of the quality of health care delivered in the Hospital."

Specifically, the Medical Staff alleged the Hospital failed to give appropriate weight to the Medical Staff's recommendations on group contracts, improperly usurped the HCB's authority to approve amendments to the Medical Staff's bylaws and blocked reasonable changes to the bylaws, eroded the Medical Staff's authority by creating the Physician Advisory Council, and violated the terms of a 2018 agreement between the Hospital and the California Attorney General. According to the Medical Staff, that agreement required the Hospital to maintain "privileges for current medical staff at [the Hospital] who are in good standing

11

as of the closing date" and to retain the "medical staff officers, committee chairs, [and] independence of the medical staff . . . for the remainder of their tenure at [the Hospital]." The Medical Staff claimed the agreement also required the Dignity Health Board to consult with the HCB "prior to making changes to medical services . . . at least sixty days prior to the effective date of such changes . . . ." The Medical Staff also alleged it had exhausted its administrative remedies because further attempts to meet and confer with the Hospital about these disputes were futile.

In its first cause of action for a writ of mandate, the Medical Staff alleged the Hospital had a "clear ministerial duty to comply with the [Medical Staff] Bylaws, which require [the Hospital] to consult meaningfully with, and to obtain the informed advice of, the [Medical Executive Committee], giving its findings on quality of care 'great weight' in its decision to terminate the existing [emergency room (ER)] Group and 40-year old relationship, initiating an RFP process, and selecting a new ER group." The Medical Staff alleged the following actions were violations of that ministerial duty: (1) "the Hospital's announced termination of the ER Group"; (2) "the initiation of the RFP process, and selection of the new ER Group without meaningful prior consultation with, and advice of, the [Medical Executive Committee]"; (3) Caldwell's "unilateral creation" of the Physician Advisory Council; (4) the Hospital's "unilateral elimination of the [HCB's] sole authority for approving Bylaw amendments"; and (5) the Hospital's "wholesale disregard" of the Medical Staff's bylaws, even though the Hospital had "agreed to be bound" by them.

The Medical Staff asked the court to issue a writ of mandate ordering the Hospital to (1) "Restore the [HCB's] sole role in approving Bylaw amendments"; (2) "Maintain the existing make-up of the Medical Staff and its [Medical Executive Committee]"; (3) Disband the Physician Advisory Council; (4) "Solicit and obtain the meaningful consultation and advice of the [Medical Executive Committee] before terminating any additional exclusive contracts and give the [Medical Executive Committee]'s review and recommendation great weight in making such a decision"; (5) "Solicit and obtain the meaningful review and recommendation of the [Medical Executive Committee] before initiating any future RFP process"; and (6) "Comply with all requirements of the Medical Staff Bylaws pertaining to the Medical Staff's rights and duties for oversight of the quality of patient care at the Hospital and for the Medical Staff's self-governance."

In its second cause of action for injunctive relief, the Medical Staff sought an injunction under sections 526 and 527 of the Code of Civil Procedure to restrain conduct that allegedly violated the Hospital's ministerial duties. The Medical Staff alleged it was likely to prevail on the merits because the Hospital had a ministerial duty, as alleged in the first cause of action, and the Hospital's conduct as alleged violated that duty. The Medical Staff also alleged it would suffer irreparable harm if the court did not issue a preliminary injunction because the Hospital would "continue to pursue its 'campaign to neuter the Medical Staff by undermining its independence through . . . the elimination of key members.'" The Medical Staff sought a preliminary and permanent injunction to restrain the Hospital from (1) "Violating the terms of [the Medical Staff's] Bylaws in their entirety and as

13

deemed approved"; (2) "Violating the terms of the Agreement with the [Attorney General]"; (3) "Preventing the [HCB] from carrying out its Bylaw amendment function"; (4) "Terminating and/or entering into any contract for professional services without first obtaining the review and recommendation of the [Medical Executive Committee] and giving great weight to that recommendation"; and (5) "Maintaining the current make-up of the Medical Staff and its [Medical Executive Committee]."

The Medical Staff's third cause of action for declaratory relief alleged there was an actual and present controversy regarding whether the proposed amendments to the bylaws must be "deemed approved" by the HCB pursuant to the Medical Staff's bylaws. The Medical Staff sought a judicial declaration that (1) the HCB did not act on the proposed amendments to the bylaws within 60 days; (2) the proposed amendments were "deemed 'approved'" by operation of the bylaws; and (3) even if the 60-day period did not lapse, the HCB "was required to consent to the Bylaw changes because withholding consent would have been unreasonable."

The Hospital opposed the petition for writ of mandate and argued the Medical Staff did not identify any ministerial duties that would support a writ of mandate. The Hospital argued that it did not have a ministerial duty to approve the proposed amendments to the Medical Staff's bylaws or to follow the Medical Staff's recommendations on exclusive contracts, that the Medical Staff lacked standing to enforce the Hospital's obligations to the Attorney General, that the Medical Staff did not submit any evidence the Physician Advisory Council exercised the authority of the Medical Staff, and that the Medical Staff failed to exhaust its administrative remedies. The Hospital

14

also argued the Medical Staff's causes of action for injunctive and declaratory relief were "untethered to a cognizable claim" and lacked merit.

The Medical Staff's reply brief relied heavily on section 2282.5, subdivision (c), which states: "With respect to any dispute arising under this section, the medical staff and the hospital governing board shall meet and confer in good faith to resolve the dispute. Whenever any person or entity has engaged in or is about to engage in any acts or practices that hinder, restrict, or otherwise obstruct the ability of the medical staff to exercise its rights, obligations, or responsibilities under this section, the superior court of any county, on application of the medical staff, and after determining that reasonable efforts, including reasonable administrative remedies provided in the medical staff bylaws, rules, or regulations, have failed to resolve the dispute, may issue an injunction, writ of mandate, or other appropriate order." The Medical Staff argued: "Whether labeled an 'injunction,' 'writ of mandate,' or 'declaratory relief,' certainly the Court has the power to issue some sort of edict to protect and enforce the Medical Staff's rights in section 2282.5."

In the context of section 2282.5, the Medical Staff identified its rights to select and remove medical staff officers (§ 2282.5, subd. (a)(3)) and to initiate, develop, and adopt medical staff bylaws, rules, regulations, and amendments, subject to the approval of the hospital governing board, approval of which the hospital could not unreasonably withhold (*id.*, subd. (a)(6)). The Medical Staff argued the Hospital violated these and other rights under section 2282.5 and suggested section 2282.5 authorized a writ of mandate to remedy such violations even in the absence of a ministerial duty.

15

The Medical Staff argued in the alternative the Hospital had ministerial duties "not to withhold approval of the proposed bylaw amendments" and to comply with the Medical Staff's bylaws. The Medical Staff argued its bylaws required the Hospital, among other things, to acknowledge only the HCB had authority to approve or reject proposed amendments to the Medical Staff bylaws, approve the proposed amendments, meaningfully consult with the Medical Staff about contracting decisions, and disband the Physician Advisory Council. The Medical Staff reiterated its assertion the Hospital violated the terms of an agreement with the Attorney General and argued it was "at least a third party beneficiary" of that agreement.

Finally, the Medical Staff argued it made reasonable efforts under section 2282.5 to resolve its disputes with the Hospital, including by engaging in "extensive meet and confer efforts" and attempting to invoke the ad hoc dispute resolution committee. The Medical Staff contended the Dignity Health Board "dragged out the [dispute resolution process] until June 2020—long enough to accomplish its goal of unilaterally terminating the Anesthesiology, Radiology, Emergency Services, and other longstanding hospital groups." The Medical Staff also argued that it exhausted its administrative remedies under the bylaws and that additional meet-and-confer efforts would have been futile. The Medical Staff based its request for injunctive and declaratory relief on section 2282.5.

E.    *The Trial Court Denies the Medical Staff's Petition for Writ of Mandate and Related Requests for Injunctive and Declaratory Relief*

The trial court denied the Medical Staff's petition for writ of mandate and related requests for injunctive and declaratory relief. The court, after observing the Medical Staff had identified section 2282.5 as "authority for a writ of mandate" for the first time in its reply brief, went on to address the merits of the Medical Staff's assertion section 2282.5 supplanted the requirements for a writ of mandate under Code of Civil Procedure section 1085. The court stated that the Medical Staff had not cited any authority for the proposition Code of Civil Procedure section 1085 did not apply to the Medical Staff's "self-governance claim" and that the Medical Staff's "reliance on alleged violations of [section 2282.5] without regard to the requirements of [Code of Civil Procedure section 1085] does not entitle it to writ relief." Thus, the court concluded, the Medical Staff had to show a "clear and present duty" that is "'unqualifiedly required.'"

The court found, however, the Medical Staff had not shown there was any such duty. The court first ruled the Hospital did not have a ministerial duty to approve or comply with the proposed amendments to the Medical Staff bylaws. The court concluded that the relevant provisions of the bylaws of the Medical Staff, the HCB, and the Hospital gave the Hospital discretion to accept or reject the proposed amendments and that the Medical Staff did not allege the Hospital acted arbitrarily or capriciously in exercising that discretion. The court also ruled the Medical Staff's failure to show the Hospital had a ministerial duty to approve or comply with the proposed amendments precluded the Medical Staff's request for an order requiring the

17

Hospital to maintain the composition of the Medical Staff before the Hospital entered into exclusive contracts with new provider groups.

The court also denied mandamus relief based on the proposed amendments to the Medical Staff's bylaws because the court found the Medical Staff failed to exhaust its administrative remedies to resolve the dispute over the bylaws. The court stated the Medical Staff "commenced the internal administrative remedy but provide[d] no evidence it completed the [ad hoc dispute resolution committee] process as to [the Medical Staff's] proposed Bylaw amendments."

Regarding the Medical Staff's request for an order requiring the Hospital to disband the Physician Advisory Council, the trial court stated the Medical Staff identified no legal authority supporting such relief, "pursuant to a non-discretionary ministerial duty or otherwise." The court also found the Medical Staff failed to show the Hospital gave the Physician Advisory Council authority to represent the Medical Staff, which the Medical Staff claimed would violate its bylaws.

Regarding the Medical Staff's request for an order directing the Hospital to "obtain the meaningful consultation and advice" from the Medical Staff in connection with the RFP process and in selecting providers, the court stated the Medical Staff had expanded its claim by arguing in its brief in support of the petition the Hospital "ignore[d]," as opposed to merely failed to consider, the Medical Staff's unanimous recommendations. The court found the Hospital did not have a ministerial duty "to accept (as opposed to consider)" the Medical Staff's recommendations. The court also found the Medical Staff's bylaws gave the Medical Staff a right to review and make

18

recommendations about "medical service arrangements," but not the RFP process.

The court denied the Medical Staff's request for relief based on the Hospital's agreement with the Attorney General because the claim arose from an alleged breach of contract, which does not support relief in mandamus. The court also found it was unlikely the Medical Staff was a third party beneficiary of that agreement because "it does not appear [the Hospital] or the Attorney General intended to benefit [the Medical Staff] as opposed to the public generally." The court transferred the Medical Staff's remaining claim not based on Code of Civil Procedure section 1085, which requested a declaration "'the [HCB] was required to consent to the Bylaw changes because withholding consent would have been unreasonable,'" to the supervising judge of the civil department for assignment to an individual calendar courtroom.

The Medical Staff dismissed its remaining cause of action for declaratory relief without prejudice, and the trial court entered judgment for the Hospital. The Medical Staff timely appealed.

## DISCUSSION

The Medical Staff states it never contended section 2282.5 supplanted Code of Civil Procedure section 1085's requirements for a writ of mandate. Therefore, we assume the Medical Staff agrees with the trial court's conclusion (and governing law) that to obtain a writ of mandate the Medical Staff had to comply with the requirements of Code of Civil Procedure section 1085, including that it had no adequate alternative remedy and that

19

the Hospital had a clear and present ministerial duty.  The Medical Staff failed to satisfy these requirements.[2]

A.    *Applicable Law and Standard of Review*

Traditional mandamus is available "to enforce a nondiscretionary duty to act on the part of a court, an administrative agency, or officers of a corporate or administrative agency."  (*Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center* (2001) 93 Cal.App.4th 607, 618; see Code Civ. Proc., § 1085, subd. (a) [a writ of mandate may compel "a corporation, board, or person" to perform "an act which the law specially enjoins"]; *Pacifica Firefighters Assn. v. City of Pacifica* (2022) 76 Cal.App.5th 758, 765 [mandamus may be "'sought to enforce a nondiscretionary duty to act on the part of . . . officers of a corporate or administrative agency'"].)  "To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists [citation]; (2) 'a clear, present, . . . ministerial duty on the part of the respondent'; and (3) a correlative 'clear, present, and beneficial right in the petitioner to the performance of that duty.'"  (*People v. Picklesimer* (2010) 48 Cal.4th 330, 340; accord, *Rutgard v. City of Los Angeles* (2020) 52 Cal.App.5th 815, 824.)

A petitioner seeking traditional mandamus ""must first invoke and exhaust the remedies provided by that organization applicable to his grievance."""  (*Eight Unnamed Physicians v.*

_____

[2]    The Medical Staff also argues the trial court erred in relying on the Medical Staff's failure to make this argument in its petition or its opening brief in the trial court.  As discussed, however, the trial court rejected the Medical Staff's argument under section 2282.5 on the merits.

*Medical Executive Com.* (2007) 150 Cal.App.4th 503, 511; see *Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center*, *supra*, 93 Cal.App.4th at pp. 619-620.) The exhaustion requirement "'speaks to whether there exists an adequate legal remedy. If an administrative remedy is available and has not yet been exhausted, an adequate remedy exists and the petitioner is not entitled to extraordinary relief.'" (*Eight Unnamed Physicians*, at p. 511; see *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 235; *Unnamed Physician*, p. 620.) "'[A]n administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures."'" (*Trejo v. County of Los Angeles* (2020) 50 Cal.App.5th 129, 148; see *City of Oakland*, at p. 235.)

A ministerial act is an act that must be performed "'"in a prescribed manner in obedience to the mandate of legal authority and without regard to [one's] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists."'" (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 279; see *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1082.) "Mandate will not issue to compel action unless it is shown the duty to do the thing asked for is plain and unmixed with discretionary power or the exercise of judgment." (*Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center*, *supra*, 93 Cal.App.4th at p. 618.)

"When an appellate court reviews a trial court's judgment on a petition for a traditional writ of mandate, it applies the substantial evidence test to the trial court's findings of fact and independently reviews the trial court's conclusions on questions of law." (*California Public Records Research, Inc. v. County of*

21

*Stanislaus* (2016) 246 Cal.App.4th 1432, 1443; accord, *CV Amalgamated LLC v. City of Chula Vista*, *supra*, 82 Cal.App.5th at p. 280; *Trejo v. County of Los Angeles*, *supra*, 50 Cal.App.5th at p. 140.) "Whether there is a "'plain, speedy and adequate remedy, in the ordinary course of law'" . . . usually is regarded as a question of fact that requires an evaluation of the circumstances of each particular case." (*Villery v. Department of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 414.) We review de novo whether the respondent had a ministerial duty capable of direct enforcement because that determination requires interpretation of the legal authority for the duty. (See *CV Amalgamated LLC*, at p. 280; *Smith v. Adventist Health System / West* (2010) 182 Cal.App.4th 729, 754-755.)

### B. *The Medical Staff Had an Alternative Remedy for the Dispute over the Contested Bylaw Amendments*

#### 1. *The Medical Staff Does Not Challenge the Trial Court's Finding the Medical Staff Failed To Exhaust Its Administrative Remedies*

As stated, the trial court found the Medical Staff did not exhaust its administrative remedies regarding the dispute over the proposed amendments to the Medical Staff bylaws. The trial court also found the dispute resolution process established by section 10.4 of the Medical Staff bylaws "provided [the Medical Staff] with a plain, speedy and adequate remedy as to [the Hospital's] rejection of [the Medical Staff's] proposed bylaws." In its opening brief, the Medical Staff does not argue substantial evidence did not support those findings. The Hospital appropriately contends the trial court's findings are "binding"

22

and provide a basis to affirm the trial court's rulings on the proposed amendments.

In its reply brief, the Medical Staff asserts it argued in the trial court and in its opening brief on appeal it took "reasonable efforts to avail itself of the administrative remedies offered in the [Medical Staff] Bylaws and why those efforts were futile." What the Medical Staff argued in the trial court is not relevant to the arguments the Medical Staff makes on appeal (except to show the argument is preserved), and nowhere in its opening brief did the Medical Staff argue substantial evidence did not support the trial court's finding the Medical Staff failed to exhaust its administrative remedies regarding the proposed amendments.

In the statement of facts section of its opening brief,[3] the Medical Staff asserts Dr. McFarland wrote to the HCB "requesting that the present dispute be resolved by resorting to the dispute resolution process contained in the Medical Staff's Bylaws." The letter the Medical Staff cites, however, concerned the dispute over the clinical services contracts, not the proposed bylaw amendments. The Medical Staff did not address in its opening brief or in its reply brief the facts underlying the trial court's finding the Medical Staff failed to exhaust its administrative remedies regarding the dispute over the proposed bylaw amendments. In particular, the trial court cited a declaration from a member of the HCB, who was also a member of the dispute resolution committee convened to address the bylaw amendment dispute, who said the committee's work had

---

[3]     The Medical Staff's reply brief cites page 161 of its opening brief. There is no such page. We assume the Medical Staff intended to cite page 16.

23

just begun on the day the Medical Staff filed its petition for writ of mandate.[4]

To the extent the Medical Staff does not challenge the trial court's findings that the Medical Staff did not exhaust its administrative remedies and that the Medical Staff's bylaws provided a plain, speedy, and adequate alternative remedy, the Medical Staff has failed to demonstrate the trial court erred in denying the petition for writ of mandate based on the proposed amendments to the bylaws. (See *City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1388-1389 [appellant conceded the trial court's factual findings by failing to challenge them on appeal].) To the extent the Medical Staff challenged those findings on appeal for the first time in its reply brief, the Medical Staff has forfeited the argument. (See *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428 [appellant who challenged factual findings for the first time in its reply brief forfeited the argument substantial evidence did not support the findings].) And even if the Medical Staff did not forfeit the argument by failing to raise it in its opening brief on appeal, the Medical Staff failed to "set forth,

---

[4] Thus, the Medical Staff also failed to comply with the dispute resolution procedure of its bylaws, which is a prerequisite to relief under section 2282.5. As stated, that statute authorizes a trial court to issue an injunction, writ of mandate, or other appropriate order only "after determining that reasonable efforts, including reasonable administrative remedies provided in the medical staff bylaws, rules, or regulations, have failed to resolve the dispute." (§ 2282.5, subd. (c).) As discussed, section 10.4 of the Medical Staff bylaws precludes a party from initiating any legal action until a dispute resolution committee convened to resolve the dispute "has completed its efforts to resolve the dispute."

discuss, and analyze all the evidence on that point, both favorable and unfavorable" (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218) or "explain why the evidence cited by the trial court does not support its findings" (*Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 515), thus again forfeiting the argument. (See *Sanchez v. Martinez* (2020) 54 Cal.App.5th 535, 548 ["An appellant 'who cites and discusses only evidence in [his] favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment.'"]; *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."].)[5]

> 2. *Most of the Medical Staff's Claims and Arguments on Appeal Arise from the Contested Amendments*

The Medical Staff's claims that the Hospital violated section 2282.5 by "divesting the HCB of its sole authority to

---

[5]     At oral argument counsel for the Medical Staff asserted the ad hoc dispute resolution committee procedure set forth in the Medical Staff bylaws was not an adequate remedy because the committee's decisions are nonbinding. (See *Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center*, *supra*, 93 Cal.App.4th at p. 620 [exhaustion doctrine "'is inapplicable where "the administrative remedy is inadequate [citation]; where it is unavailable [citation]; or where it would be futile to pursue such remedy"'"].) The Medical Staff forfeited this argument by not making it in its opening brief (or even in its reply brief). (See *Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982.)

approve proposed bylaw amendments," that the proposed bylaw amendments were "deemed approved," and that the Hospital unreasonably withheld its approval of the amendments, all stem from the Medical Staff's dispute over the proposed amendments to its bylaws. Because the Medical Staff did not exhaust its administrative remedies regarding the bylaw amendments, the Medical Staff had an adequate legal remedy and was not entitled to mandamus relief on these claims. (See *Eight Unnamed Physicians v. Medical Executive Com.*, *supra*, 150 Cal.App.4th at p. 511.)

Three of the Medical Staff's four remaining arguments on appeal also arise from or relate to the dispute over the bylaw amendments and similarly fail for failure to exhaust administrative remedies. First, the Medical Staff claims the Hospital violated section 2282.5 by improperly terminating the clinical services contracts, which caused the removal of Medical Staff officers. The Medical Staff's argument on appeal (as it was in the trial court) is not that the Hospital did not have authority to allow the existing contracts to expire or to contract with other groups, but that the Hospital refused "to allow the Bylaw amendment that would have resolved the dispute" by protecting the staff privileges of existing officers.[6] That's a claim based on the proposed bylaw amendments.

_____

[6] To the extent the Medical Staff contends the termination of group contracts violated the Hospital's agreement with the Attorney General, the Medical Staff has not shown such a claim is redressable through mandamus. The Medical Staff does not address this aspect of the trial court's ruling and argues only (and unconvincingly) it is a third party beneficiary of that agreement. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 ["the burden is on an appellant to demonstrate . . . that the trial court

Second, the Medical Staff argues the trial court erred in ruling the Hospital did not have a ministerial duty to accept the Medical Staff's recommendations on clinical services contracts. In the trial court the Medical Staff claimed its bylaws required the Hospital to solicit and obtain (and accept) the Medical Staff's recommendations on exclusive service contracts and RFPs. On appeal, however, the Medical Staff argues the trial court's ruling in this regard "ignored the ministerial duties imposed by [section] 2282.5, one of which required [the Hospital] not to unreasonably withhold its consent to the Medical Staff's Bylaw amendments." That, too, is an issue about the contested bylaw amendments. The Medical Staff otherwise assigns no error to the trial court's ruling regarding the Hospital's duty to solicit and obtain the recommendation of the Medical Staff on exclusive contracts and RFPs.

Finally, the Medical Staff argues the trial court erred in rejecting its contention the Hospital breached the terms of the Medical Staff bylaws, which the Medical Staff asserts create a binding contract. In the trial court, the Medical Staff made this argument in connection with its claim the Hospital violated the Medical Staff's bylaws by removing the HCB's authority to approve the proposed amendments. Again, that's a claim about the proposed bylaw amendments.

Because these three arguments arise from or relate to the dispute over the proposed amendments to the Medical Staff's bylaws, and the Medical Staff failed to exhaust its administrative remedies to resolve that dispute, the Medical Staff did not satisfy the requirements of Code of Civil Procedure section 1085 for

committed an error that justifies reversal"]; *Kinsella v. Kinsella* (2020) 45 Cal.App.5th 442, 464 [same].)

27

obtaining mandamus relief. (See *City of Oakland v. Oakland Police & Fire Retirement System*, *supra*, 224 Cal.App.4th at p. 235; *Eight Unnamed Physicians v. Medical Executive Com.*, *supra*, 150 Cal.App.4th at p. 511; *Unnamed Physician v. Board of Trustees of Saint Agnes Medical Center*, *supra*, 93 Cal.App.4th at p. 620.) Therefore, the trial court did not err in denying the Medical Staff's petition for a writ of mandate for claims based on the proposed bylaw amendments.[7]

C. *The Medical Staff Bylaws Do Not Create a Ministerial Duty Prohibiting the Hospital from Establishing the Physician Advisory Council*

That leaves the Medical Staff's fourth remaining argument, which is that the Medical Staff bylaws, in particular section 10.1.1, gave it the "legal authority" to disband the Physician Advisory Council and that the trial court erred in requiring the Medical Staff to show "a complete overlap" between the Medical Staff's authority and the authority of the Physician Advisory Council. But because the Medical Staff cited only sections 10.3.1 and 10.3.2 in the trial court, it forfeited any argument under section 10.1.1. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 697, fn. 12.)

---

[7] At oral argument counsel for the Medical Staff conceded that all but two of the Medical Staff's claims were related to the contested bylaws. One of those claims is the one concerning the Hospital's acceptance of Medical Staff recommendations on clinical services contracts. As discussed, however, that claim is related to the contested bylaws, which counsel for the Medical Staff subsequently acknowledged at oral argument. The other claim is the one concerning the Physician Advisory Council, which we address next.

28

In any event, section 10.1.1 does not create a ministerial duty on the part of the Hospital to disband the Physician Advisory Council. Section 10.1.1 states: "The Medical Executive Committee . . . shall be the standing committee of the Medical Staff. Unless otherwise specified, the Chairperson and members of all committees shall be appointed by the Chief of Staff and may be removed by the Chief of Staff subject to consultation with and approval by the Medical Executive Committee. These committees are advisory to the Medical Executive Committee and shall make their recommendations to the Medical Executive Committee. They shall have only the power specifically granted to them by the Medical Executive Committee and shall be responsible to the Medical Executive Committee." This provision arguably makes the Medical Executive Committee the only entity that can represent the Medical Staff at large, but it does not say the Medical Executive Committee is the only entity that may give the Hospital feedback on matters concerning the Medical Staff. Therefore, section 10.1.1 does not establish a ministerial duty preventing the Hospital from creating a committee like the Physician Advisory Council. To the extent the Physician Advisory Council initiated changes to the Medical Staff's "rules and policies," section 13.1.6 of the Medical Staff's bylaws arguably precludes such changes.[8] But the Medical Staff did not present evidence documenting any work the Physician Advisory Council actually did, nor did the Medical Staff cite section 13.1.6 as the source of a ministerial duty. The Medical Staff has not shown the trial court committed any error in analyzing the

---

[8] Section 13.1.6 states: "The mechanisms described [in the bylaws] shall be the sole methods for the initiation, adoption, amendment, or repeal of the Medical Staff rules and policies."

29

comparative authorities of the Medical Staff and the Physician Advisory Council.

## DISPOSITION

The judgment is affirmed. The Hospital is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.