[No. A113456. First Dist., Div. One. May 2, 2007.]

EIGHT UNNAMED PHYSICIANS, Plaintiffs and Respondents, v.
MEDICAL EXECUTIVE COMMITTEE OF THE MEDICAL STAFF OF
WASHINGTON TOWNSHIP HOSPITAL, Defendant and Appellant.

504

COUNSEL

Nossaman, Guthner, Knox & Elliott, Kurt W. Melchior, Michael G. Thornton, Deborah E. Beck; Ware Law Group and Kimberly S. Ware for Defendant and Appellant.

Reed Smith, Paul D. Fogel, John E. Dittoe, Mary C. Oppendahl and David J. de Jesus for Plaintiffs and Respondents.

OPINION

**MARCHIANO, P. J.**—The Medical Executive Committee (MEC) of the Medical Staff (Medical Staff) of Washington Township Hospital (Hospital) appeals from the judgment granting the petition of Eight Unnamed Physicians (Physicians) for a writ of mandate in a dispute over procedure in a medical disciplinary proceeding. The MEC recommended that the Physicians' Medical Staff membership and clinical privileges at the Hospital be terminated, and the Physicians have each requested a hearing pursuant to the Medical Staff bylaws to contest the recommendation. The dispute involves the manner in which the hearings are to proceed: the Physicians want the hearings consolidated into one proceeding, and the MEC wants separate hearings for each physician.

█ The peremptory writ of mandate ordered in the judgment commands the MEC to submit to a consolidated hearing. The MEC argues that the judgment must be reversed because the Physicians have failed to exhaust their administrative remedies, or because MEC has discretion to require individual hearings. We conclude that reversal is required because of the failure to exhaust administrative remedies, and need not determine whether the MEC's refusal to agree to consolidation was an abuse of discretion.

## I. BACKGROUND

The Physicians were eight of 11 members of a medical group that, according to the MEC's charges, had for years arranged to provide all necessary anesthesia services at the Hospital in return for a virtually exclusive opportunity to do so. On Saturday, November 20, 2004, the Hospital learned that the Physicians would be moving their practices to another hospital on the following Monday, November 22. The MEC seeks to discipline the Physicians individually for this "precipitous withdrawal" of services that allegedly could have jeopardized patient safety and undermined public confidence in the Hospital. The Physicians deny the charges and contend arrangements for coverage were in place.

The MEC recommended that the Hospital board of directors (Board) terminate the Physicians' clinical privileges and Medical Staff membership, and the Physicians each requested a judicial review committee (JRC) hearing to dispute the recommendation.[1] The Medical Staff bylaws provide that members can challenge adverse actions such as those involved here by requesting a hearing before a JRC comprised of at least three Medical Staff members. (Articles 7.2, 7.3-5; all references to Articles are to the Medical Staff bylaws.) The MEC and the member present evidence to the JRC at the hearing (Article 7.4-5), and the JRC, acting as a decision maker, determines whether the adverse action is "reasonable and warranted" (Article 7.4-7.C).

The MEC appoints a hearing officer, functioning as a legal facilitator, to preside at the hearing. (Article 7.4-3.) "The Hearing Officer shall endeavor to assure that all participants in the hearing have a reasonable opportunity to be heard and to present relevant oral and documentary evidence in a[n] efficient and expeditious manner, and that proper decorum is maintained. The Hearing Officer shall be entitled to determine the order of or procedure for presenting evidence and argument during the hearing and shall have the authority and discretion to make all rulings on questions which pertain to matters of law, procedure or the admissibility of evidence. If the Hearing Officer determines that either side in a hearing is not proceeding in an efficient and expeditious manner, the Hearing Officer may take such discretionary action as seems warranted by the circumstances." (Article 7.4-3.)

The JRC's decision is "considered final" under the bylaws unless it is appealed to the Board. Article 7.5-1 of the bylaws pertaining to the time for such an appeal provides in full: "Within fifteen (15) days after receipt of the decision of the JRC, either the member or the MEC may request an appellate review. A written request for such review shall be delivered to the Chief of Staff, the CEO, and the other party in the hearing. If a request for appellate review is not requested within such period, the Board shall then approve, reject, or modify the recommendation."[2] Article 7.5-2 pertaining to the grounds for such an appeal states in full: "A written request for an appeal shall include an identification of the grounds for appeal and a clear and concise statement of the facts in support of the appeal. The grounds for appeal from the hearing shall be: a) substantial non-compliance with the procedures required by these Bylaws or applicable law which has created demonstrable prejudice; b) the decision was not supported by substantial

---

[1] Termination of those privileges and that membership for a medical disciplinary reason has adverse professional consequences. (Bus. & Prof. Code, § 805 [report to the Cal. Medical Bd.].)

[2] This provision allows for individualized discipline for each physician based on the nature of the case presented against each physician.

evidence based upon the hearing record." An appeal board of the Board holds "an appellate hearing based upon the record of the hearing before the JRC," and recommends to the Board whether to "affirm, modify, or reverse the JRC decision, or remand the matter to the JRC for further review and decision." (Article 7.5-5.) The Board then renders a final decision. (Articles 7.5-6.A, 7.5-7.)

The bylaws stipulate that members must exhaust the foregoing remedies "before resorting to legal action." (Article 7.1-1.)

After requesting their JRC hearings, the Physicians each waived their right to an individual hearing and asked that the hearings be consolidated. The MEC denied the request, and appointed eight JRC panels and eight hearing officers to hear each of the cases separately. The Physicians moved in each of the eight proceedings for consolidation.[3] Five of the eight hearing officers (Schnier, Kaplan, Di Benedetto, Phillips, LaPallo) denied the consolidation motions on the ground that they had no authority to issue rulings governing hearings over which they did not preside. One hearing officer (Singer) denied the consolidation motion on the principal ground that the decision whether to consolidate was committed to the MEC's discretion. One hearing officer (Bartel) found that he had no authority to "arbitrarily intrude into the other pending proceedings, usurp the authority and discretion of the other Hearing Officers, and peremptorily order consolidation," but thought that all of the hearing officers should decide whether consolidation was advisable in principle, and then engage with the parties and counsel in a "a meet and confer process" to "work out the appropriate subsequent processes." One hearing officer (O'Connell) determined that she had authority under the bylaws to order consolidation and granted the motion to consolidate.

Various communications between the hearing officers and parties ensued. The Physicians wrote a letter to the hearing officers and the MEC, stating they understood that the hearings had been consolidated before Hearing Officer O'Connell, and that all other scheduled dates were off calendar. Hearing Officers Schnier, Kaplan, Di Benedetto, Phillips, and Singer responded that they did not acknowledge O'Connell's authority to rule with respect to their hearings, and said that they planned to proceed with them. O'Connell wrote

---

[3] The first such motion was made to hearing officer Bartel, who recommended that the hearings for the other Physicians be continued until he had ruled on the motion. Counsel for the MEC denied the request, stating, ". . . we wish to move forward. And then we will accept the consequences of the outcome of any motion and in-court proceeding challenging rulings on these motions. And we believe every motion with respect to each individual physician must be made in his or her own hearing."

an e-mail stating that "I was not, by my ruling, necessarily assuming (or presuming) control of all proceedings," and proposing that the hearing officers and counsel have a conference call or group meeting. Hearing Officers Bartel and LaPallo thought that a group meeting would be useful only if the parties agreed to one. The MEC said it believed a group meeting was unnecessary. In response to an inquiry from the Physicians, Bartel and LaPallo confirmed that, like the other hearing officers, they did not believe O'Connell's ruling affected their hearings. O'Connell indicated that she no longer thought a conference call was in order, and said that she, "like the other Hearing Officers, would proceed as best as she could with whatever information [she] was able to garner."

The Physicians then filed their Code of Civil Procedure section 1085 petition for writ of mandate herein. The petition's recitation of the JRC proceedings concluded: "Thus, none of the eight hearings have been consolidated . . . . As it stands, [the Physicians] therefore face eight individual hearings that are slated to continue while the Court considers this writ petition." The petition sought consolidation of the JRC hearings and a stay of the hearings until the petition was decided.

The MEC demurred to the petition on the ground that the Physicians had failed to exhaust their administrative remedies. The court overruled the demurrer and stayed the JRC proceedings pending determination of the petition. "As to whether there exists an adequate legal remedy available to Petitioners," the court found "(1) to make the Petitioners wait until the hearing process is complete to seek review of the various consolidation determinations is illogical; and (2) it does not appear from the Bylaws that the appellate procedure set forth therein is available to Petitioners to seek review of the various determinations regarding consolidation. (See Article 7.5-1 of the Bylaws.)"

The order granting the petition first concluded that the MEC did not have discretion to unilaterally reject the Physicians' request for consolidation. The court reasoned in this regard that "once Petitioners requested consolidation, and agreed to waive their right to individual hearings, the MEC lacked the authority to reject that request unilaterally. The MEC could have negotiated an agreement regarding consolidation with Petitioners, but failing that, it was obligated to leave the question of consolidation to a neutral decision maker. Under the Bylaws, that decisionmaker should have been Hearing Officer Bartel, the first hearing officer selected by the MEC and accepted by Petitioners. [¶] The MEC's contrary position—that it is vested with the authority to reject consolidation unilaterally—would allow it, as the adversary

of Petitioners, to make a procedural decision actually entrusted to the hearing officer, and one which could deprive Petitioners of a fair hearing. Such a position is not supported by the silence of the Bylaws on this issue and is contrary to fundamental due process."

The order next concluded that even if the MEC had discretion to decide the consolidation issue, it abused that discretion in denying consolidation because, on balance, consolidation was justified. The court thought, on the one hand, that "Petitioners have made clear that they will likely suffer substantial prejudice if each of them must separately defend against the charges that they acted wrongly because of their actions as a group. Witnesses, who Petitioners cannot compel to testify, may not be available for eight separate hearings to give the same testimony and subject themselves to the same cross examination. The risk of inconsistent results for essentially the same conduct cannot be ignored. And . . . multiplying the expense of these hearings by a magnitude of eight cannot be justified absent some compelling countervailing reason." On the other hand, the MEC's reasons for rejecting consolidation "do not satisfy this Court. The right to individual hearings is part of a process to protect the individual physician, not a requirement that the MEC can turn to its tactical advantage in the absence of some compelling reason. None has been offered."

The court concluded further that the MEC abused its discretion in failing to implement Hearing Officer O'Connell's consolidation order. The court believed that, by rejecting Hearing Officer Bartel's suggestion that he alone decide the consolidation issue, the MEC had "created a situation in which conflicting orders could be made on the exact same procedural issue," and thus should not be "free to decide which order it will follow, and which it will ignore. . . . [T]o allow the MEC, as an adversary, to follow only those procedural rulings it agrees with, flies in the face of fairness and due process."

The court issued a writ of mandate directing the MEC to provide the Physicians with a consolidated hearing before Hearing Officer Bartel and a single JRC panel, and ordering that the other seven JRC proceedings be permanently suspended.

## II. DISCUSSION

### A. *The Exhaustion of Administrative Remedies Doctrine Applies*

■ " 'It is the general and well established jurisdictional rule that a plaintiff who seeks judicial relief against an organization of which he is a

member must first invoke and exhaust the remedies provided by that organization applicable to his grievance.' " (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 474–475 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*); see also Kaiser Foundation Hospitals v. Superior Court (2005) 128 Cal.App.4th 85, 99–100 [26 Cal.Rptr.3d 744] (*Kaiser*) [describing the exhaustion of administrative remedies doctrine].) Under this doctrine, " 'a party must go through *the entire proceeding* to a "*final* decision on the merits of the entire controversy" before resorting to the courts for relief.' " (*Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1125 [272 Cal.Rptr. 273] (*Bollengier*).)

■ The exhaustion doctrine applies in medical disciplinary proceedings such as those here. "[B]efore a doctor may initiate litigation challenging the propriety of a hospital's denial or withdrawal of privileges, he must exhaust the available internal remedies afforded by the hospital." (*Westlake, supra,* 17 Cal.3d at p. 469.) In Business and Professions Code section 809 et seq., "the Legislature has granted to individual hospitals, acting on the recommendations of their peer review committees, the primary responsibility for monitoring the professional conduct of physicians licensed in California." (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 201 [46 Cal.Rptr.3d 41, 138 P.3d 193].) "Although the decision in *Westlake* applied to the 'fair procedure' a hospital was required to provide under California common law [citation], rather than to the statutory peer review procedure now required by [Business and Professions Code] section 809 et seq. . . . the exhaustion doctrine applies under the new statutory scheme as much as it did under the previous common law scheme." (*Kaiser, supra,* 128 Cal.App.4th at p. 100, fn. 13.)

The exhaustion requirement applies whether relief is sought by traditional (Code Civ. Proc., § 1085) or administrative (Code Civ. Proc., § 1094.5) mandamus. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619–620 [113 Cal.Rptr.2d 309] (*Unnamed Physician*).) Where, as here, the petitioner is pursuing traditional mandamus, "the exhaustion requirement speaks to whether there exists an adequate legal remedy. If an administrative remedy is available and has not yet been exhausted, an adequate remedy exists and the petitioner is not entitled to extraordinary relief." (*Id.* at p. 620.)

B. *An Administrative Remedy Is Available*

The exhaustion requirement does not apply if no administrative remedy is available. (*Kaiser, supra,* 128 Cal.App.4th at p. 101; *Bollengier, supra,* 222 Cal.App.3d at p. 1126.) The Medical Staff is a self-governing, autonomous

body with a carefully crafted set of bylaws that incorporate traditional due process procedures including a right of appeal. Here, the Medical Staff bylaws provide that a JRC decision is appealable to the Board. The Physicians therefore have a valid administrative remedy that they are required to exhaust, as we now further explain.

The trial court cited the "Time for Appeal" provision of the bylaws (Article 7.5-1) in overruling the MEC's demurrer and finding that there was no administrative remedy available to the Physicians with respect to the consolidation issue. This bylaw, as previously noted, provides for Board review only after a JRC decision has been rendered. If, as its citation of this provision suggests, the court determined that no administrative remedy is available because the bylaws do not afford a right to have the consolidation issue reviewed before the JRC proceedings are concluded, then the court's ruling was untenable under the rationale in *Bollengier* and the principle of exhaustion of administrative remedies.

The doctor in *Bollengier* requested a medical review committee hearing to contest revocation of his medical staff privileges. At a " 'law and motion' " hearing before the presiding hearing officer, the doctor disputed the "procedural validity" of the charges against him, but the hearing officer refused to dismiss the charges. (*Bollengier, supra,* 222 Cal.App.3d at p. 1121.) Before the review committee hearing began on the merits, the doctor petitioned for a writ of mandate, "argu[ing] that he should not be required to stand trial on charges which were procedurally defective." (*Id.* at p. 1122.) The trial court denied the petition for failure to exhaust administrative remedies, and the appellate court affirmed.

The opinion observed that because the doctor was "not contesting the validity of the medical staff bylaws as written, but rather contend[ing] that the bylaws were not followed" (*Bollengier, supra,* 222 Cal.App.3d at p. 1123), he was not excused from exhausting administrative remedies on the theory that the "administrative procedures [were] the very source of the asserted injury" (*id.* at p. 1127). The situation is the same in this case. The Physicians are not contesting the validity of the bylaws, but rather the MEC's alleged failure to follow them by not acceding to one hearing officer's consolidation ruling.

*Bollengier* went on, for reasons equally applicable here, to conclude that the timing of the administrative review did not render the remedy inadequate. "[I]t must be remembered," the court wrote, "that license suspension, revocation or other similar disciplinary proceedings involving licensees are not for the purpose of punishment but primarily to protect the public served by the licensee employed by a hospital." (*Bollengier, supra,* 222 Cal.App.3d at p. 1128.) Hospitals are not required to "rigid[ly] adhere[] to any particular

procedure" in discharging this public safety function, and the courts' limited role is to ensure only that the basic requirements of due process and fair procedure—adequate notice of charges and a reasonable opportunity to be heard—are observed. (*Id.* at pp. 1128–1129.) The doctor was asserting that the "administrative remedies are inadequate because there is no mechanism for an interim review of the claimed procedural deficiencies. However, case law interpreting the 'fair procedure' requirement does not indicate the necessity for any such interim review procedure. Rather, the courts recognize they should not interfere with the hospital's disciplinary process so long as a fair hearing is provided. . . . [¶] . . . Permitting court review before a final administrative decision is rendered where, as here, the individual has been afforded notice and an opportunity to be heard and there is a mechanism for reviewing the claimed errors at the administrative level, could vitiate the exhaustion requirement. . . . Thus, the general rule that the organization's violation of its own rules does not furnish a right for direct resort to the courts should apply here." (*Id.* at pp. 1129–1130.)

Accordingly, contrary to the trial court's apparent conclusion, the Physicians' ability to appeal to the Board if the JRC proceedings are not decided in their favor affords them an adequate, available remedy, and no interim review procedure is required. The court's views on matters such as whether the MEC should have negotiated an agreement on consolidation with the Physicians or deferred to a hearing officer on that issue did not entitle it to intervene in the incomplete administrative proceedings and micromanage a process entrusted in the first instance to hospitals and their self-governing medical staffs, not to the courts. As *Bollengier* makes clear, a court's role with respect to a hospital's disciplinary procedures is confined to safeguarding basic due process rights, which do not include consolidation of hearings, or procedures employed in deciding a consolidation issue. (See also *Kaiser*, *supra*, 128 Cal.App.4th at pp. 103–104 [exhaustion of administrative remedies required even though hospital failed to meet bylaw deadline for commencement of peer review hearing, because failure was not a deprivation of fundamental due process]; *Rhee v. El Camino Hospital Dist.* (1988) 201 Cal.App.3d 477, 497–501 [247 Cal.Rptr. 244] [hospital's violation of its bylaws did not deprive doctor of due process].)

■ The Physicians point out that, under the bylaws here, the hearing officer decides matters of procedure and the JRC adjudicates the merits, and they venture that appellate review by the Board extends only to the JRC's decision on the merits, and not to the hearing officer's procedural rulings. The Physicians find this alleged limitation on the scope of the Board's review in Article 7.5-1, which the Physicians call "the Bylaws' 'appellate review' provision," and which they note "refers only to the 'decision of the JRC.' " However, Article 7.5-1 merely sets the time within which to bring a Board appeal (15 days after receipt of the JRC decision), and refers to the JRC

decision only in that context. The scope of review is established by Article 7.5-2, which includes as grounds for appeal "substantial non-compliance with the *procedures* required by these Bylaws or applicable law which has created demonstrable prejudice." (Italics added; see *Weinberg v. Cedars-Sinai Medical Center* (2004) 119 Cal.App.4th 1098, 1108 [15 Cal.Rptr.3d 6] [medical staff rules did not limit hospital board's appellate role to substantial evidence review].) If the decision to hold separate hearings somehow results in prejudice to any of the eight physicians, the prejudiced physician has a right to raise that issue on appeal to the Board. Thus, contrary to the Physicians' claim, the bylaws plainly provide for Board review of procedural matters such as the consolidation issue here. This conclusion is in accord with the MEC's reading of its bylaws, and we independently agree with the MEC's interpretation. (See generally *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 531, 555 [27 Cal.Rptr.3d 171] [court usually defers to agency's construction of its own regulations, but bears ultimate responsibility for deciding whether agency's interpretation is clearly erroneous or unreasonable].)

For these reasons, the court erred in concluding that no administrative remedy was available.

## C. *No Exception to the Exhaustion Requirement Applies*

An administrative remedy need not be exhausted if pursuit of that remedy would result in irreparable harm. (*Kaiser, supra,* 128 Cal.App.4th at p. 105.) The Physicians maintain that the irreparable harm exception to the exhaustion requirement applies here. We disagree for the following reasons.

The Physicians submit that their cases on the merits will be prejudiced by the failure to consolidate their hearings because they have no subpoena power and might not be able to marshal their witnesses for all of the individual hearings. The record does not demonstrate that any crucial witness will in fact be unavailable to any of the Physicians if separate hearings are held, and any potential problems stemming from the lack of subpoena power will be faced equally by both sides in the proceedings. The mere will-o'-the-wisp potential for prejudice at this stage is insufficient to overcome the requirement of exhaustion of remedies. As hearing officer Singer noted in his ruling on the consolidation motion, testimony can be preserved on videotape and the procedural problem envisioned by the Physicians is a matter of speculation. In this respect, the situation in the Physicians' case is like the one in *Unnamed Physician, supra,* 93 Cal.App.4th 607, where the doctor alleged that he would be prejudiced by the hearing officer's denial of his request for documents. "It is for this very reason," the decision observed, that "courts hesitate to intervene in administrative proceeding which are not yet final. Because the

hearing has not proceeded to its final end, appellant cannot meet his burden to show that the withheld information denied him a fair hearing . . . ." (*Id.* at p. 627.) Similarly here, the Physicians may prevail in the JRC proceedings, and thus cannot show any irreparable harm to their cases at this point.

The other irreparable harm the Physicians allege is the cost of the individual hearings. Physicians' counsel submitted a declaration in support of the consolidation motions estimating that whereas a consolidated hearing would cost the Physicians $150,000 to $200,000 to complete, individual hearings would increase their aggregate expense to over $1 million. Based on those figures, the Physicians each submitted a declaration stating that they would "probably" be unable to pursue separate hearings because the cost would be prohibitive. The MEC countered with declarations indicating that California anesthesiologists have a median annual income of $294,000, and that anesthesiologists at the hospital to which the Physicians transferred earn over $500,000 per year.

▮ It appears that no reported California case has squarely discussed the expense of exhausting an administrative remedy as constituting an irreparable injury excusing compliance with the exhaustion requirement. However, *Unnamed Physician, supra,* 93 Cal.App.4th at page 620, has observed that " '[a] remedy will not be deemed inadequate merely because additional time and effort would be consumed by its being pursued through the ordinary course of the law,' " and such "time and effort" will inevitably involve some cost. The Ninth Circuit has persuasively held that "litigation expenses, however substantial and nonrecoverable, which are normal incidents of participation in the agency process do not constitute irreparable injury." (*State of Cal. ex rel. Christensen v. F. T. C.* (9th Cir. 1977) 549 F.2d 1321, 1323.) If the rule were otherwise, the exhaustion requirement would be abrogated. As the MEC notes, doctors ordinarily bear the cost of individual hearings to contest their discipline. The expenses the Physicians seek to avoid are thus "normal incidents" of the administrative process, and they are not excepted from the exhaustion requirement by their failure to receive a group discount. Moreover, cost conscious, creative lawyers with today's technology and law firm resources should be able to economize in a manner that does not jeopardize an adequate defense.

The Physicians have failed to demonstrate from this record the likelihood that irreparable harm will occur if separate hearings occur. The doctrine of exhaustion of remedies rests on a notion of judicial restraint and a deference to disciplinary proceedings that satisfy basic due process to which all members of the medical staff agreed.

## III.  DISPOSITION

The judgment granting the petition for writ of mandate is reversed, and the court is directed to enter a judgment denying the petition.

Stein, J., and Margulies, J., concurred.

A petition for a rehearing was denied May 22, 2007, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied August 22, 2007, S153346. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.