Filed 5/23/25  Najibi v. Providence Valley Service Area Community Ministry Bd. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SASAN NAJIBI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>PROVIDENCE VALLEY SERVICE AREA COMMUNITY MINISTRY BOARD et al.,<br><br>Defendants and Respondents. | B338255<br><br>(Los Angeles County<br>Super. Ct. No. 23STCP01247) |

APPEAL from orders of the Superior Court of Los Angeles County.  Curtis A. Kin, Judge.  Affirmed.

Athene Law, Long Xuan Do and Avi W. Rutschman for Plaintiff and Appellant.

California Medical Association Center for Legal Affairs, Jamie Ostroff and Shari Patricia Covington as Amicus Curiae on behalf of Plaintiff and Appellant.

Arentfox Schiff, Debra Jill Albin-Riley, Franjo Michael Dolenac and M.H. Joshua Chiu for Defendants and Respondents.

_____

Dr. Sasan Najibi's medical staff privileges at the hospital where he practiced for 20 years were summarily suspended, and a peer review proceeding was initiated for possible termination of his privileges. While the matter was pending, Najibi filed a traditional writ of mandate action (Code Civ. Proc., § 1085), seeking to challenge claimed procedural faults associated with the suspension and the peer review process. The trial court sustained a demurrer filed by defendants, finding that appellant failed to allege claims properly cognizable by traditional writ of mandate. We conclude that Najibi's claims are barred for failure to exhaust administrative remedies, and accordingly affirm the order sustaining the demurrer and subsequent dismissal.

## BACKGROUND

### I. Peer review process and privileges

"Hospitals in this state have a dual structure, consisting of an administrative governing body, which oversees the operations of the hospital, and a medical staff, which provides medical services and is generally responsible for ensuring that its members provide adequate medical care to patients at the hospital. In order to practice at a hospital, a physician must be granted staff privileges." (*El-Attar v. Hollywood Presbyterian Medical Center* (2013) 56 Cal.4th 976, 983 (*El-Attar*).) The medical staff of a hospital "must adopt written bylaws 'which provide formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate.' " (*Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1267 (*Mileikowsky*).)

2

Hospital peer review is the process through which decisions concerning medical staff membership and privileges are made. (*Mileikowsky, supra,* 45 Cal.4th at p. 1267.)  The primary purpose of peer review is to protect patient health by excluding those physicians who engage in professional misconduct or provide substandard care. (*Ibid.*)  "Another purpose, also if not equally important, is to protect competent practitioners from being barred from practice for arbitrary or discriminatory reasons."  (*Ibid.*)  The statutory scheme governing the peer review process is set out at Business and Professions Code section 809 et seq.  "Under California's peer review statute, a hospital must afford a physician a fair hearing before revoking the physician's staff privileges."  (*Natarajan v. Dignity Health* (2021) 11 Cal.5th 1095, 1101.)

The peer review statute "establishes minimum protections for physicians subject to adverse action in the peer review system." (*Mileikowsky, supra*, 45 Cal.4th at p. 1268.)  "The statutory scheme guarantees, among other things, a physician's right to notice and a hearing before a neutral arbitrator or an unbiased panel, the right to call and confront witnesses and to present evidence, and the right to a written decision by a trier of fact."  (*El-Attar, supra,* 56 Cal.4th at p. 988.)  Medical staff bylaws, so long as consistent with statute, also govern the peer review hearing process.  (*Id.* at pp. 988–989.)

For matters taking place within the purview of acute care hospitals, the peer review statute allows licentiates as well as "nonlicentiates on a hospital governing body to perform peer review." (*Lin v. Board of Directors of PrimeCare Medical Network, Inc.* (2025) 108 Cal.App.5th 1163, 1188.)  In this regard, Business and Professions Code section 809.05 (section 809.05) details "limitations" to "the policy of this state that peer review be performed by licentiates."  Those limitations include, among others:  "(a) The governing bodies of acute care hospitals have a legitimate function in the peer review process.  In all peer review matters, the governing body shall give great weight to

the actions of peer review bodies and, in no event, shall act in an arbitrary or capricious manner.  [¶]  (b) In those instances in which the peer review body's failure to investigate, or initiate disciplinary action, is contrary to the weight of the evidence, the governing body shall have the authority to direct the peer review body to initiate an investigation or a disciplinary action, but only after consultation with the peer review body.  No such action shall be taken in an unreasonable manner.  [¶]  (c) In the event the peer review body fails to take action in response to a direction from the governing body, the governing body shall have the authority to take action against a licentiate.  Such action shall only be taken after written notice to the peer review body and shall fully comply with the procedures and rules applicable to peer review proceedings established by Sections 809.1 to 809.6, inclusive." (§ 809.05, subds. (a)–(c).)

## II.    Allegations

The relevant factual allegations in this matter are drawn from the operative first amended petition for writ of mandate (the Petition), filed by Najibi in December 2023.

The Petition alleges in pertinent part as follows:  Najibi is a board certified vascular surgeon, who has been licensed to practice in the State of California since 1998.  He has been a member of the medical staff at Providence Saint Joseph Medical Center (the Hospital) since 2002, where he served for over five years on the medical staff's Medical Executive Committee (MEC) and was twice elected to terms as chief of staff.  The MEC generally has authority to review and investigate conduct and clinical care of physician members, and its powers can include suspension of staff privileges and initiating formal peer review.

The Providence Valley Service Area Community Ministry Board (the Board), which is the "governing body" of the Hospital, is composed of community members and physicians.  The Board's obligations include the responsibility, authorization, and obligation to oversee and

4

govern medical staff matters at the Hospital. The Petition names as defendants the Board, the Hospital, and the nonprofit corporation that owns the Hospital.

The Petition alleges, on information and belief, that beginning in or around late 2021, the Hospital's administrative leadership conducted an investigation into the workplace environment at the Hospital. The investigation focused on Najibi as well as another physician, who was then the chief of the medical staff. The Board formed an ad hoc committee to review the findings of the investigation and conduct additional factfinding. While the workplace investigation was underway, the MEC was not notified by the Board or its representatives that the investigation would focus on Najibi, and the MEC was not requested to assist with the investigation. Najibi himself was not informed that the investigation was looking into accusations against him of improper conduct.

On June 1, 2022, upon request of the Board, MEC members attended a meeting at which the Board's ad hoc committee presented findings and a report of the workplace investigation. The discussion focused entirely on accusations leveled against Najibi (who was present for part of the meeting) and the then-chief of staff. According to the presentation, the two doctors were primarily responsible for an "overall toxic work environment and culture" that "created a workplace filled with tension and hostility that directly impacts patient care," and the two "presented an imminent danger to patient and caregiver safety."

The meeting lasted approximately two hours before the Board "demanded" that the MEC immediately impose a summary suspension of Najibi's staff privileges[1] at the Hospital. Najibi alleges that the suspension demand and the meeting were deficient and wrongful in a multitude of ways, including: the Board presented no information

---

[1] The petition uses the terms "staff privileges" and "clinical privileges" interchangeably.

5

suggesting that Najibi provided medical care in an improper manner; the Board presented vague statements from unidentified witnesses concerning fears of retaliation and improper behavior, and did not include statements from staff members who had worked most closely with Najibi; rather than focusing on risk of harm to patients, the Board claimed that Najibi's threatening and disruptive behavior had been going on for many years, without restraint, and that it contributed to an unsafe work culture; and MEC members were given approximately 30 minutes to review the workplace investigation report and then directed to immediately impose summary suspension of Najibi's privileges, without consideration of less severe remedies.

The Petition further alleges that the MEC took the Board's demand for summary suspension seriously and, without Najibi present, deliberated to consider whether summary suspension was warranted. Najibi "is informed and believes that the MEC refused to impose the requested summary suspension[] on June 1, 2022." Its reasons for refusal allegedly included that the presentation and report lacked sufficient evidence of misconduct posing an imminent danger to the health of any individual, and that the Board refused to provide direct evidence upon which the investigation was based, such as witness statements or affidavits. The Petition goes on to allege, on information and belief, that the MEC relayed to the Board its preference not to summarily suspend Najibi, but instead to further investigate the need for summary suspension. Approximately half an hour after learning of the MEC's position, the Board, on June 1, 2022, voted to unilaterally impose summary suspension of Najibi's clinical privileges.

The next day, on June 2, 2022, the MEC met to consider whether to ratify the summary suspension. The MEC elected not to ratify the suspension and informed the Board of its decision.

On June 20, 2022, Najibi filed an action in superior court (the "prior action"). In the prior action, as in this one, Najibi sought a writ of traditional mandate challenging the summary suspension. He

6

alleged that the Board failed to follow the appropriate notice procedures. After the superior court denied a preliminary injunction requested by Najibi, he filed a dismissal of the prior action, purportedly without prejudice, in August 2022.

By letter dated September 7, 2022, defendants provided written notice to Najibi of the commencement of a formal peer review proceeding recommending (1) the confirmation of the suspension of his staff privileges and (2) permanent termination of his privileges and Hospital medical staff membership. At the time of this appeal, this peer review proceeding remains ongoing.

The Petition details a number of alleged flaws with the pending peer review proceeding. Among other issues, Najibi contends that, in initial disclosures of documents, defendants have improperly redacted individual names and other information. The Petition further complains that the Board initially chose to conduct the peer review proceeding before a panel of arbitrator(s), rather than a panel of Hospital medical staff members, even though (according to Najibi) the Hospital medical staff bylaws (Bylaws) allow for the use of arbitrators "only in rare circumstances." Defendants asserted that an unbiased panel could not be selected from the Hospital's medical staff, and that the then-chief of staff and the MEC confirmed that it would not be feasible to appoint an unbiased hearing committee from the medical staff, a conclusion that Najibi rejects. Najibi alleges that he, through counsel, met and conferred extensively with defendants' legal counsel on the decision to proceed with a panel of arbitrators, and initiated this traditional mandate action in April 2023 "after it became clear" that defendants intended to proceed with a panel of arbitrators.

In July 2023, defendants informed Najibi that they had appointed a hearing officer for the peer review proceeding, and in August 2023 informed him that the hearing panel would consist of physicians from outside the Hospital. Najibi objected to using a panel of physicians who were not members of the Hospital medical staff.

7

Najibi alleges in his Petition that the Bylaws do not allow for the use of nonmedical staff physicians in a peer review proceeding, and that he "is being forced to defend himself in the peer review proceeding that is the subject of this writ action in a peer review format that does not conform to the Medical Staff Bylaws." He further contends that defendants "are violating the Bylaws" by "first seeking to proceed with arbitrators" instead of a judicial hearing committee (JHC) composed of medical staff "and then abruptly switching to a JHC of physicians from outside the Medical Staff." The Petition continues by describing a number of alleged violations of the Bylaws and peer review statutes, chiefly section 809.05, associated with the summary suspension and the peer review hearing against Najibi.

The Petition pleads two causes of action for writ of mandate under Code of Civil Procedure section 1085, one related to the summary suspension of staff privileges, and the other related to the composition of the peer review panel and other matters in the continuing peer review proceeding. Two other alleged causes of action, for declaratory relief and an injunction, are not pursued by Najibi on appeal.

## III. Trial court order and appeal

Defendants filed a demurrer to the Petition, relying on two separate grounds relevant to the issues raised on appeal: (1) that Najibi's claims could not be brought under a writ of traditional mandate because Najibi failed to allege violation of a ministerial duty or an actionable abuse of discretion, and (2) that Najibi failed to exhaust his administrative remedies before seeking judicial relief. On February 5, 2024, the trial court sustained the demurrer based on the first ground, with 30 days leave to amend.

Rather than amending the Petition, as allowed by the order, Najibi filed a voluntary request for dismissal of the entire action, with prejudice. Dismissal was entered by clerk, as requested, on March 7, 2024.

8

Najibi thereafter filed a notice of appeal from the "order sustaining demurrer with leave to amend resulting in dismissal with prejudice."

## DISCUSSION

Najibi challenges the trial court order sustaining defendants' demurrer.

We first note that, rather than obtaining a judgment of dismissal from the trial court, Najibi declined to amend the Petition and voluntarily dismissed his case. In general, a voluntary dismissal is not appealable. (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 975; *Denney v. Lawrence* (1994) 22 Cal.App.4th 927, 930, fn. 1.) In this case, however, Najibi dismissed the action with prejudice for the purpose of expediting this appeal. Further, by the time the dismissal was entered, the 30-day deadline for Najibi to amend the Petition had expired, effectively rendering the demurrer ruling final by preventing amendment. Under these circumstances, we elect to allow the appeal. (See *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 793 ["many courts have allowed appeals by plaintiffs who dismissed their complaints after an adverse ruling by the trial court, on the theory the dismissals were not really voluntary, but only done to expedite an appeal"]; *Gutkin v. University of Southern California,* at p. 974 [voluntary dismissal to expedite appeal after adverse demurrer ruling treated as judgment for purposes of appeal].)

We review an order sustaining a demurrer de novo. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We also consider exhibits attached to the pleading (*Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 288), as well as matters that may be judicially noticed (*Blank, supra*, at p. 318).

9

## I. Traditional Versus Administrative Mandate

Najibi brought this case under Code of Civil Procedure section 1085. Such an action is termed a traditional mandate proceeding, while an action brought pursuant to Code of Civil Procedure section 1094.5 is an administrative mandate proceeding. (*Eight Unnamed Physicians v. Medical Executive Com.* (2007) 150 Cal.App.4th 503, 511 (*Eight Unnamed Physicians*).)

Generally speaking, quasi-judicial acts are reviewed by administrative mandate, whereas ministerial or quasi-legislative acts are reviewed by traditional mandate. (*McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1785; *CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 279 (*CV Almagamated*).) "It is settled that traditional mandamus only lies to compel the performance of a clear, present ministerial duty. [Citation.] 'Mandamus cannot be used to compel the exercise of discretion in a particular manner or to order a specific result when the underlying decision is purely discretionary. [Citation.]' " (*Sierra Club v. Department of Parks & Recreation* (2012) 202 Cal.App.4th 735, 740.) A writ of traditional mandate requires that: "(1) the respondent has a clear, present, and usually ministerial duty to act; and (2) the petitioner has a clear, present, and beneficial right to performance of that duty." (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 618 (*Unnamed Physician*).)

While traditional mandate may be sought to correct a clear abuse of discretion (*Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1124 (*Bollengier*)), the relevant inquiry addresses whether the quasi-legislative act was " 'arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law.' " (*CV Amalgamated, supra,* 82 Cal.App.5th at p. 280.) Additionally, the act must prejudice the petitioner. (*Crestwood Behavioral Health, Inc. v. Baass* (2023) 91 Cal.App.5th 1, 21.) Traditional mandate " 'will not issue if the duty is

10

not plain or is mixed with discretionary power or the exercise of judgment.' " (*The H.N. & Frances C. Berger Foundation v. Perez* (2013) 218 Cal.App.4th 37, 46.)

An administrative mandate proceeding, on the other hand, reviews the " 'final adjudicative action of an administrative body.' " (*Bollengier, supra,* 222 Cal.App.3d at pp. 1123–1124.)  Such a review includes consideration of the "conduct or result of an administrative hearing." (*Conlan v. Bontá* (2002) 102 Cal.App.4th 745, 752.)

A suspension or termination of medical staff privileges is properly challenged by a petition for administrative mandate. (*El-Attar, supra,* 56 Cal.4th at p. 987; *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 815–817 [superseded on other grounds, as explained in *Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 678, fn. 11].)  Where "a physician challenges the procedures by which a hospital terminated his or her staff privileges, the judicial inquiry 'extend[s] to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*El-Attar,* at pp. 987–987, quoting Code Civ. Proc., § 1094.5, subd. (b).)

The trial court in this matter found that Najibi's claims were not properly cognizable by traditional writ of mandate since each act complained of involved a discretionary determination.  Because we determine that Najibi failed to exhaust his administrative remedies, as explained in the following section, we do not reach this ground relied upon by the trial court.[2]

---

[2] The California Medical Association filed an amicus curiae brief in this appeal on behalf of Najibi discussing the respective roles of medical staffs and hospital governing boards.  Some of the issues raised by amicus curiae were not raised in the trial court or by Najibi here; we

11

## II. Failure to Exhaust Remedies

The Petition expressly summarizes its claims as (1) "challenging the procedural correctness" of the summary suspension of Najibi's privileges, and (2) "compelling Respondents to strictly abide by the procedural rules laid out in California law and the Hospital's medical staff bylaws in a formal peer review proceeding by which Respondents seek to confirm the summary suspension and a preliminary recommendation to terminate Petitioner's medical staff membership and privileges at the Hospital." Both of these aims challenge the peer review process concerning Najibi's staff privileges, which remains ongoing. As stated in the Petition, "This writ petition and action is directed at a formal peer review proceeding."

### A. Applicability of the exhaustion of remedies doctrine

Defendants contend that, by filing this traditional mandate action before the completion of the peer review proceeding, Najibi has failed to exhaust administrative remedies. "In general, a party must exhaust administrative remedies before resorting to the courts." (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.) The exhaustion doctrine " 'is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).' " (*Ibid.*) The doctrine " ' "is not a matter of judicial discretion, but is a fundamental rule of procedure." ' " (*Unnamed Physician, supra,* 93 Cal.App.4th at

---

accordingly do not consider them. (See *People v. Hannon* (2016) 5 Cal.App.5th 94, 105 ["Courts generally do not consider new issues raised in amicus curiae briefs"]; accord, *Crump v. Appellate Division of Superior Court* (2019) 37 Cal.App.5th 222, 251, fn. 11.) In any event, the discussion in the brief is largely immaterial to the issue we find determinative, the exhaustion of administrative remedies rule.

p. 620.)  Even when an administrative proceeding does not eliminate the possibility of a subsequent judicial action, it "will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 476.)

The doctrine of exhaustion of remedies applies to hospital peer review proceedings.  (*Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 100; *Eight Unnamed Physicians, supra*, 150 Cal.App.4th at p. 511.)  A physician "challenging the propriety of a hospital's denial or withdrawal of staff privileges must pursue the internal remedies afforded by that hospital to a final decision on the merits before resorting to the courts for relief." (*Unnamed Physician, supra,* 93 Cal.App.4th at p. 619.)

The exhaustion of remedies doctrine applies in both administrative and traditional mandate actions.  (*Eight Unnamed Physicians, supra*, 150 Cal.App.4th at p. 511.)  "When seeking relief under traditional mandamus, the exhaustion requirement speaks to whether there exists an adequate legal remedy.  If an administrative remedy is available and has not yet been exhausted, an adequate remedy exists and the petitioner is not entitled to extraordinary relief. 'A remedy will not be deemed inadequate merely because additional time and effort would be consumed by its being pursued through the ordinary course of the law.  [Citations.]'  Inconvenience does not equal irreparable injury." (*Unnamed Physician, supra,* 93 Cal.App.4th at p. 620.)

**B.    Najibi has not exhausted administrative remedies**

We conclude that Najibi's action fails at the pleading stage due to his failure to exhaust administrative remedies.  Najibi brought this traditional mandate action while the peer review proceeding relating to the suspension and potential termination of his staff privileges was pending, and the proceeding remains ongoing.  Najibi has an administrative remedy available, and there is no dispute that it has not

13

yet been exhausted.  He makes several arguments in support of his contention that the exhaustion of administrative remedies doctrine should not bar this judicial action, none of which we find availing.

In his briefing, Najibi emphasizes that the trial court did not base its demurrer ruling on a failure to exhaust administrative remedies, and contends that the matter is therefore not ripe for review.  This assertion misconstrues the scope of appellate review.  We affirm a judgment of dismissal if correct on any ground stated in the demurrer, independent of the reasons given by the trial court.  (*Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 877; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)  Defendants properly raised the failure to exhaust administrative remedies in their demurrer, and we therefore may consider this ground.

Najibi additionally argues that exhaustion of remedies requires consideration of disputed issues of fact and may not be addressed at the pleading stage.  Again, Najibi is incorrect.  "Exhaustion of administrative remedies is jurisdictional and can be addressed 'at any point in the proceedings.' " (*Los Globos Corp. v. City of Los Angeles* (2017) 17 Cal.App.5th 627, 634.)  A failure to exhaust remedies may "serve as a basis for affirming the sustaining of a demurrer without leave to amend." (*Ibid.*)  Defendants' assertion that the action was barred for failure to exhaust remedies was drawn from the facts alleged in the Petition.  The issue is appropriately considered on demurrer.

Turning to more substantive matters, Najibi contends that the peer review proceeding cannot serve as an adequate process to adjudicate whether the Board has complied with section 809.05 in suspending Najibi's staff privileges, relevant to his first cause of action.  He also asserts that the makeup of the panel (the JHC) for the peer review proceeding, as alleged in his second cause of action, is not a matter that can be addressed administratively.

14

### 1. *Suspension of staff privileges*

A doctor who challenges a suspension of staff privileges "must pursue the internal remedies afforded by that hospital to a final decision on the merits before resorting to the courts for relief." (*Unnamed Physician, supra,* 93 Cal.App.4th at p. 619; accord, *Eight Unnamed Physicians, supra*, 150 Cal.App.4th at p. 511.) While the exhaustion of administrative remedies rule does not apply when an administrative remedy is unavailable or inadequate (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 217), Najibi does not—and presently cannot—contend that the pending peer review proceeding is unavailable or inadequate to address the suspension of his privileges.

Nor do the claimed deficiencies of the initial June 2022 suspension of Najibi's staff privileges give rise to an immediate right to traditional mandate relief. The Petition contends that the Board violated section 809.05 in imposing the summary suspension of Najibi's privileges by (in pertinent part) not giving "great weight" to the actions of the MEC, inadequately consulting with the MEC, and acting in a manner that was arbitrary or capricious. Najibi's vague allegations of possible—though not clear—variances from the procedure prescribed by statute, resulting in no certain prejudice, do not excuse him from pursuing internal remedies. (See *Bollengier, supra,* 222 Cal.App.3d at pp. 1124–1125 [in traditional mandate, a "clear" abuse of discretion is required, and the petitioner's right to the action must be "clearly established"]; see also *Eight Unnamed Physicians, supra,* 150 Cal.App.4th at p. 514 ["The mere will-o'-the-wisp potential for prejudice at this stage is insufficient to overcome the requirement of exhaustion of remedies"].)

A remedy relating to privileges is considered inadequate if it does not afford a physician "fair procedure." (*Tiholiz v. Northridge Hosp. Found.* (1984) 151 Cal.App.3d 1197, 1202.) "[T]he concept of 'fair procedure' does not require rigid adherence to any particular

procedure, to bylaws or timetables." (*Id.* at p. 1203.)  Fair procedure, at a minimum, requires "adequate notice of the administrative action proposed or taken by the group or institution, and a reasonable opportunity to be heard." (*Id.* at p. 1202.)  " 'Code of Civil Procedure section 1085 anticipates the arbitrary or improper refusal by an association to hold a hearing and authorizes resort to a writ of mandate to compel such a hearing.' " (*Payne v. Anaheim Memorial Medical Center, Inc.* (2005) 130 Cal.App.4th 729, 745.)  Najibi does not contend that he has been denied a hearing with respect to the suspension of his privileges or suffered any similar, material harm.  Based on the cognizable facts pleaded in the Petition, there has been no actionable deprivation of fair procedure in this case.

*Bollengier, supra,* 222 Cal.App.3d 1115, involved circumstances similar to those in this action and is instructive here.  The physician in *Bollengier*, in internally contesting revocation of his medical staff privileges, contended that the charges against him were procedurally invalid.  After the hearing officer in the administrative proceeding concluded the charges could not be dismissed for procedural defects, the physician filed a mandate action under Code of Civil Procedure section 1085.  (*Bollengier,* at p. 1122.)  The appellate court affirmed a trial court order finding that the judicial action was barred for failure to exhaust administrative remedies.  (*Id.* at p. 1123.)  The *Bollengier* court reasoned that the "fact that a suspension is imposed summarily does not in itself violate" a physician's "fair procedure rights." (*Id.* at p. 1129.)  The court also rejected the claim that a lack of an interim review procedure for asserted procedural defects rendered the administrative remedy inadequate, concluding:  "[T]he courts recognize they should not interfere with the hospital's disciplinary process so long as a fair hearing is provided.  The fact petitioner is facing numerous charges of misconduct and claims procedural irregularities took place, does not warrant court intervention before the administrative proceedings are concluded." (*Ibid.*)

Further allegations made by the *Bollengier* petitioner also resembled Najibi's, in that the physician claimed that his summary suspension was invalid because a requirement that "the need for immediate action in the best interest of patient care" was not met, and that "the suspension was done in bad faith." (*Bollengier, supra,* 222 Cal.App.3d at p. 1131.) The court rejected these additional claims as a basis for relief, finding that they were challenges to the grounds for suspension, not procedural challenges, and were properly addressable in the administrative proceeding. (*Ibid.*)

Najibi likewise fails to demonstrate a right to bypass the pending administrative hearing and immediately obtain relief from this court. The suspension of Najibi's privileges is a matter directly at issue in the peer review proceeding. The mere possibility of procedural infirmities in the initial suspension of privileges—that, according to the Petition, the Board did not give "great weight" to the actions of the MEC and similar allegations—does not warrant court intervention prior to completion of the proceeding. (See *Bollengier, supra,* 222 Cal.App.3d at p. 1129 [claimed procedural irregularities did not warrant court intervention].)

This conclusion is consistent with judicial reluctance to intervene prematurely in peer review matters, particularly where, as here, the statutory framework and Bylaws provide for an internal hearing process. Permitting judicial review at this stage would undermine the integrity of the peer review system and encourage piecemeal litigation. (See *Westlake Community Hosp. v. Superior Court, supra,* 17 Cal.3d at p. 476 ["by insisting upon exhaustion . . . courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the merits of the plaintiff's claim in the first instance"].) Because the allegations of the Petition do not support the conclusion that an administrative remedy is unavailable or inadequate, Najibi cannot avoid the exhaustion of administrative remedies doctrine on this basis.

### 2.    *Composition of the peer review panel*

Najibi's second cause of action revolves around the makeup of the JHC, the panel responsible for hearing evidence and rendering a decision in the peer review proceeding.  The Petition alleges that defendants "are violating the Bylaws" by "first seeking to proceed with arbitrators" instead of physicians on the Hospital medical staff, "and then abruptly switching to a JHC of physicians from outside the Medical Staff."[3]  The Petition also alleges that discovery violations, including unwarranted redactions to produced documents, have occurred during the ongoing peer review proceeding.

As with his first cause of action, these claims are barred for failure to exhaust administrative remedies.  Najibi must pursue his administrative remedies to their conclusion before raising the claims in court.  (*Unnamed Physician, supra,* 93 Cal.App.4th at p. 619; *Eight Unnamed Physicians, supra*, 150 Cal.App.4th at p. 511.)  He does not demonstrate that an administrative remedy is unavailable or inadequate.  (See *Bollengier, supra,* 222 Cal.App.3d at p. 1127.)

Although a challenge to bylaws may be addressed by mandate in certain circumstances, those conditions are not present here.  In rejecting a similar claim that administrative remedies were inadequate, the *Bollengier* court noted that the petitioner in that case was "not challenging the validity of the bylaws as written.  Rather, he is challenging the charges on the ground the bylaws were not followed." (*Bollengier, supra,* 222 Cal.App.3d at p. 1127.)  This type of challenge was insufficient to compel mandate relief prior to completion of the administrative proceeding.  (*Id.* at pp. 1127–1128.)

The *Bollengier* court explained:  "[I]n the context of union grievances . . . the organization's 'violation of its own rules which

---

[3] The Petition also alleged that actions related to the JHC violated the peer review statutes, but Najibi limits his discussion on appeal to alleged violations of the Bylaws.

inflicts the initial wrong furnishes no right for direct resort to the courts.' [Citation.] 'It is only when the organization violates its rules for appellate review or upon a showing that it would be futile to invoke them that the further pursuit of internal relief is excused.' [Citation.] These principles are applicable to proceedings concerning the restriction or suspension of a physician's hospital privileges." (*Bollengier, supra,* 222 Cal.App.3d at p. 1128.) Because the petitioner in *Bollengier* challenged a violation of the bylaws and the claim was not subject to an exception, it was barred by the exhaustion doctrine. (*Ibid.*) In contrast, *Unnamed Physician, supra*, 93 Cal.App.4th 607, distinguished *Bollengier* on the basis that the *Bollengier* "petitioner's claim was a failure to comply with the bylaws and that he had expressly stated he was not challenging the bylaws as written." (*Unnamed Physician,* at p. 621.) The bylaws challenge in *Unnamed Physician*, on the other hand, was not barred on the same basis because the appellant "allege[d] the bylaws themselves are deficient and fall below the dictates of due process." (*Ibid.*)

In this matter, Najibi does not contend that the Bylaws are deficient. Instead, he simply alleges that by "first seeking to proceed with arbitrators," "and then abruptly switching to a JHC of physicians from outside the Medical Staff," as well as by allegedly failing to comply with discovery obligations, defendants have violated the Bylaws. His traditional mandate claim is thus barred due to his failure to exhaust administrative remedies. (*Bollengier, supra,* 222 Cal.App.3d at pp. 1127–1128; *Unnamed Physician, supra*, 93 Cal.App.4th at p. 621; see also *Eight Unnamed Physicians, supra,* 150 Cal.App.4th at p. 512 [applying exhaustion doctrine when physicians were "not contesting the validity of the bylaws, but rather the MEC's alleged failure to follow them"].)

In any event, even if Najibi could plausibly contend that his challenge remains viable even though based on alleged violations of the Bylaws, his claims regarding alleged deficiencies in discovery and the

19

composition of the JHC are too uncertain to support traditional mandate relief at this juncture. (See *Bollengier, supra,* 222 Cal.App.3d at pp. 1124–1125 [in traditional mandate, "clear" abuse of discretion is required and right to the action must be "clearly established"].) While Najibi complains about the initial appointment of arbitrators, he acknowledges that section 6.3.6 of the Bylaws allows for the appointment of an arbitrator under certain circumstances.[4] This appointment may occur upon a conclusion that "the appointment of a hearing panel is impossible," and the Petition contains allegations that a determination of impossibility was made. Further, the decision to use a panel of external physicians was reached only after Najibi objected to the use of arbitrators.

Thus, the most recent composition of the JHC appears to have been prompted in part by Najibi's concerns. Furthermore, the text of the relevant Bylaws does not contain any clear prohibition on the use of outside physicians, since the relevant Bylaw, section 6.3.6, simply states, "The arbitrator need not be a health professional," which reasonably implies that the arbitrator (or arbitrators) may be health professionals. Any alleged violation of the Bylaws is therefore far from clear.

This determination is further compelled by reference to other sections of the Bylaws, which, among other provisions, allow for "substantial compliance" with the hearing procedure and provide that "[t]echnical non-prejudicial or insubstantial deviations from the

---

[4] Najibi quoted extensively from the Bylaws in his Petition and references them repeatedly in his appellate briefs. Additionally, the Bylaws were before the trial court when ruling on the demurrer and are a part of the record on appeal. Najibi avers that this court may properly rely on the Bylaws in deciding this matter, and we agree. (See *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103 [judicial notice may be taken of documents pertinent to the issues raised by a demurrer].)

procedures set forth in these Bylaws shall not be grounds for invalidating the action taken" (Bylaws, § 6.1.4), include an extensive appeal process (Bylaws, §§ 6.5.1–6.5.7), and reiterate that each Hospital staff member has a duty to exhaust remedies by completing the procedures set forth in the Bylaws "before attempting to obtain judicial relief" (Bylaws, § 6.1.1). Moreover, the Bylaws allow for the presiding officer at the hearing to "rule on disputed discovery requests" (Bylaws, § 6.3.8), obviating Najibi's claim that he lacks an adequate administrative remedy in discovery disputes.

In short, Najibi cannot avoid application of the exhaustion of administrative remedies doctrines simply by alleging a violation of the Bylaws, and even if such a claim were available, the alleged violations are too uncertain to support an immediate basis for traditional mandate relief. (See *Eight Unnamed Physicians, supra,* 150 Cal.App.4th at p. 513 [court should not "micromanage" incomplete administrative proceedings].) The second cause of action is therefore barred by the failure to exhaust administrative remedies.

### 3. *Futility*

Finally, Najibi argues that an exception to the exhaustion of remedies doctrine—futility—should be found to apply.

The exhaustion requirement will be excused "where its pursuit would be futile, idle or useless." (*Bollengier, supra*, 222 Cal.App.3d at p. 1126.) "However, the futility exception is very narrow and will not apply unless the petitioner can positively state that the administrative agency has declared what its ruling will be in a particular case." (*Ibid.*; accord, *Kaiser Foundation Hospitals v. Superior Court, supra*, 128 Cal.App.4th 85, 101.) The Petition in this case contains no indication that the peer review panel (or any other body) has declared what its ruling will be.

Najibi argues that a futility finding is nevertheless warranted because of "the Board's complete domination of the peer review proceeding." A governing board's appointment of review hearing

participants, however, does not mean that the hearing will be unfair. (*El-Attar, supra,* 56 Cal.4th at p. 996.)  "Simply because the governing body of a hospital may be in a position to deprive a physician of a fair hearing does not mean that it is likely to do so."  (*Ibid.*)  Moreover, Najibi's possible belief that the ultimate resolution is likely to be unfavorable is of no moment.  " 'His own speculative, subjective feelings about the matter do not allow him to unilaterally ignore avenues of review.  If that were the case, exhaustion would be a dead doctrine.' " (*Bollengier, supra,* 222 Cal.App.3d at p. 1130; see also *Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara* (2024) 102 Cal.App.5th 1303, 1310 [belief or preconception of futility does not allow petitioner to bypass the administrative remedy].)

We thus conclude that both traditional mandate causes of action are barred by Najibi's failure to exhaust administrative remedies.  The demurrer was therefore properly sustained.

## DISPOSITION

The order sustaining the demurrer and subsequent order of dismissal are affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



RICHARDSON, J.

22